No. 44,630

THE STATE OF KANSAS, *Appellee,* v. JOHN OMO, *Appellant.*

(428 P. 2d 768)

Opinion filed June 10, 1967.

*James F. Foster,* of Wichita, argued the cause, and *Jerry Ann Foster,* of Wichita, was with him on the brief for the appellant.

*R. K. Hollingsworth,* deputy county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: The defendant John Omo was found guilty by a jury of the offenses of burglary in the second degree (K. S. A. 21-520), larceny in connection with a burglary (K. S. A. 21-524) and possession of a pistol after having been convicted of grand larceny (K. S. A. 21-2611).

Upon notice and proof of a prior conviction of a felony, the habitual criminal act was invoked as to the convictions of the first two offenses; upon the burglary charge defendant was sentenced to confinement in the penitentiary for a period of not less than ten nor more than twenty years, and upon the larceny charge confinement for a period of not more than ten years, such sentences to run concurrently. Upon the possession of the pistol charge he was sentenced to confinement for a period not to exceed five years, such latter sentence to be served consecutively to the first two. Defendant now appeals from the order overruling his motion for new trial.

Defendant along with one Paul L. Casanova was charged with burglarizing the Rock Motor Court in Wichita during the early morning of April 13, 1965, and in connection therewith, with the theft of a clock radio and a bedspread. Defendant was also charged with possession on or about the 12th or 13th day of April, 1965, of a .22 caliber pistol after having been convicted in the state of Nebraska of the offense of grand larceny.

Upon appeal defendant's complaints involve alleged trial errors, necessitating brief review of the evidence pertinent thereto.

On the afternoon of April 12, 1965, defendant was sitting in a booth with a girl in the Blue Lounge tavern in Wichita; a detective who had a traffic warrant for defendant entered the tavern; when defendant saw the detective he tried to put a gun in the girl's purse; the girl refused to permit him to do this; defendant ran outside the tavern; the detective found him hiding in the alley and arrested him on the traffic warrant; the girl testified the gun was similar to a .22 caliber pistol shown to her in court.

Another girl companion of defendant testified she had a date with him the night of April 12, 1965; after visiting three night clubs they obtained a 1957 Ford belonging to a Loyeen McDaniels; they then picked up Paul Casanova and a Linda McCoy at the former's home; around 1:30 a. m. the following morning they drove to the Rock Motor Court; defendant got out of the car and knocked on a door of a motel room and then returned to the car; he turned the car around and stopped it near the same place; defendant and Casanova got out of the car and went into a different room; the two were empty handed when they went in but when they returned a few minutes later they were carrying a clock radio and a bedspread similar to those placed in evidence. During the same early morning hours the clock radio was left by defendant at the trailer home of two other girls.

The night clerk at the motel saw defendant stop at the motel at about 2:00 a. m. on April 13, 1965; defendant was driving a two-tone car believed to be around a 1955 model; a boy and girl were in the back seat of the car and a girl was in the front with defendant; the clerk observed defendant first go to room No. 19 in which there was a renter; upon seeing defendant later running from room No. 15, he became suspicious; he checked room No. 15, which had not been rented, and found the radio missing; he did not at that time notice the bedspread was missing.

The police department was notified about the incident and a dispatch issued for the lookout of a group in a 1955 black and white Ford.

At about 3:15 a. m. the same morning in the nineteen hundred block on North Broadway in Wichita the police stopped defendant in the automobile he had been driving; Casanova and the two girls were with him; a police officer standing outside the vehicle shone his flashlight inside the automobile, and saw a bedspread—later identified as the one taken from the motel—on the floor in the back seat; in the company of the officer and at his request, defendant went to the motel and was identified by the night clerk as the person he had seen earlier; the night clerk then noticed the bedspread was missing; defendant was placed under arrest and taken to the Wichita police station; the bedspread was seized by the arresting officer; the McDaniels' automobile was driven to the police station and placed in the police parking lot; after delivering the defendant to the police station for booking the arresting officer went immediately to the car in the parking lot and searched it; he found a .22 caliber pistol under the dashboard of the vehicle; the officer had no search warrant or consent to make the search.

On behalf of defendant one Tony Pinzino testified he (Pinzino) had purchased a radio and two bedspreads in Kansas City, Missouri, and that during the early morning of April 13, 1965, he had given these items to defendant to hold for him.

Upon appeal defendant contends the pistol taken from the vehicle was improperly admitted into evidence because of an illegal search and seizure, in violation of the fourth amendment of our federal constitution, relying principally upon *Preston v. United States,* 376 U. S. 364, 11 L. ed. 777, 84 S. Ct. 881.

This court considered the application of the *Preston* decision to a factual situation virtually identical to the case at bar in *State v. Wood,* 197 Kan. 241, 416 P. 2d 729, and held the evidence there complained of was not secured by an unreasonable search and seizure, saying:

"In *United States v. Rabinowitz,* 339 U. S. 56, 94 L. Ed. 653, 70 S. Ct. 430, cited in the *Preston* opinion, it was stated:

" '. . . The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. . . . The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the

facts and circumstances—the total atmosphere of the case. . . .' (pp. 65-66.)

"To meet the test of reasonableness, a search may be incident to an arrest if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. . . . The right to make a contemporaneous search without a search warrant extends to things under the accused's immediate control . . . and to some extent, depending on the circumstances of the case, to the place where he is arrested. . . .

"The 'place of arrest' in cases involving a search of an automobile over which an accused has immediate control at the time of arrest has reference to the vehicle itself rather than its geographical location. An automobile, because of its mobility, requires application of rules in the search thereof different from those governing the search of a house. . . . In *Arwine v. Bannan,* 346 F. 2d 458 (6th Cir. 1965), where the automobile in which the defendant had been arrested was moved to the police station before it was searched, the court stated:

" '. . . The place of arrest, in this case, must be considered the automobile in which Arwine was sitting when he was arrested; it was the automobile over which he had control, or in which he was legitimately present, that was the place of search. The place where the arrest was made was not the geographical area in which the car was parked; . . .' (p. 470.)

"The factual differences in *Preston* and the instant case cannot be overlooked. Here, the law enforcement officers had probable cause to arrest the defendant. The officers involved in the defendant's apprehension were in constant communication with each other and were aware of the events that had transpired prior to the arrest. A search of the defendant's person at the time of the apprehension yielded a check which directly connected him with the crimes. The search of the automobile was conducted for stolen articles which the officers had reason to believe were in the vehicle. Unlike *Preston,* there was no evidence of unusual delay or an impounding of the vehicle prior to the search.

"We doubt that *Preston* can be interpreted to mean that a police officer must search the vehicle at the moment of arrest when an equally prudent course of action would be to move the vehicle to a more convenient or suitable location for the search. We are more inclined to believe that the holding in *Preston* turned upon the lack of continuity of purpose by the arresting officers. . . .

"The question of reasonableness of a search must be resolved from the facts and circumstances of each particular case. Our view of the evidence in the instant case is that the arrest of the defendant, the removal of the automobile and its search were a series of events constituting one continuous happening. Under such circumstances, the search occurred substantially contemporaneous with and incidental to the arrest. The fact defendant was not present did not prevent the search from being incidental to his arrest. . . ." (pp. 244-246.)

In the instant case probable cause for the arrest existed, making it a lawful one. The arrest occurred about 3:15 a. m. Four persons were in the automobile, necessarily making them become suspect. The vehicle belonged to someone other than the four occupants,

whose exact connection to the alleged offense was not then known. The arresting officer, assisted by another officer, delivered these suspects after their arrest to the police station and, without delay— even of "booking" procedure—immediately searched the automobile. At this time the radio known to be missing from the motel room had not been discovered. The police custody and search of the automobile were directly related to the offense occasioning the arrest; this was not the case in *Preston* where the initial arrest was for vagrancy. The fact that the custody and search of Preston's automobile were unrelated to the charge upon which he was arrested, therefore causing the search to be unreasonable, appears to be the rationale of the *Preston* decision as subsequently indicated in *Cooper v. California*, 386 U. S. 58, 17 L. ed. 2d 730, 87 S. Ct. 788, in which it was said that, although lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it, ". . . the reason for and nature of the custody may constitutionally justify the search." (p. 61.)

Continuity of purpose by the arresting officer, an essential factor in *Wood*, was plainly evident in the case at bar.

A bedspread, which developed later to be incriminating evidence, was noticed in plain view in the automobile, but the impracticality of thorough search under the circumstances at the time of the initial arrest seems obvious. The vehicle at all times following the initial arrest remained under police surveillance and custody, and the lapse of time between that arrest and the search in the police lot was as short as possible under the circumstances. We think the search was substantially contemporaneous with the arrest, with a view to preventing destruction or removal of evidence relevant to the burglary and larceny, and therefore incident to the arrest. As stated in *Wood*, ". . . the arrest of the defendant, the removal of the automobile and its search were a series of events constituting one continuous happening." (p. 246.) That a pistol was found, rather than other relevant evidence such as the fruit of the offenses, does not militate against the legality of the search. We hold the search and seizure was not unreasonable and the pistol was admissible in evidence.

For an excellent discussion of post-*Preston* decisions, federal and state, where results harmonious with the conclusion herein were reached, see *People v. Webb*, 56 Cal. Rptr. 902, 424 P. 2d 342, decided March 8, 1967.

Defendant further complains the bedspread taken from the automobile was improperly received in evidence because it too was the product of an illegal search and seizure. As indicated, the item was in the plain and open view of the arresting officer when he first looked into the vehicle. Defendant argues it was not definitely known at the time the officer first saw the bedspread that such an article had been stolen. This may be conceded. However, that fact became known at the time of defendant's arrest. The right to *seize* is to be distinguished from the right to *search the premises* of arrest. Incidental to the arrest of a person an officer has the right to *seize* the obvious or reasonably apparent fruit or contraband of crime in plain view at the time and place (see *State v. Hunt,* 198 Kan. 222, 424 P. 2d 571).

We hold the seizure by the arresting officer of the bedspread apparently stolen in connection with the burglary of the motel room was lawful.

Based upon the testimony of Tony Pinzino offered by defendant and already stated, defendant requested the trial court to submit an instruction to the jury that he might be found guilty of the offense of receiving stolen property. This request was refused. Defendant asserts the refusal as error, in effect arguing the offense of receiving stolen property is a lesser degree of the crime of larceny which was charged. Not so! The offenses of larceny of property and receiving stolen property are separate and distinct crimes (*State v. Fields,* 70 Kan. 391, 78 Pac. 833; *State v. Wasinger,* 133 Kan. 154, 298 Pac. 763). The trial court properly refused the request.

Defendant next complains that over his objections he was tried at the same time upon offenses of burglary and larceny and the unrelated offense of possession of a pistol after having been convicted of grand larceny, such offenses being charged in two separate informations. He argues that by the joinder he was prejudiced in his trial upon the burglary and larceny charge in that the prosecution was thereby allowed to show possession of a pistol and that he had been previously convicted of grand larceny.

The instructions given the jury at trial have not been abstracted. There being no contention to the contrary, we must therefore assume they were correct and that the jury was properly instructed as to how it should consider the evidence as to each separate offense charged. Nor is the nature of the previous offense of grand larceny in Nebraska shown.

Although the question is not wholly free from difficulty, we think defendant's contention of prejudicial error may not be sustained upon this state of the record.

As indicated by defendant, two potential areas of prejudice exist in the admission of evidence: First, as to possession of the pistol; and, second, as to the previous conviction of felony.

We have held evidence of possession of a pistol under certain circumstances to be relevant upon trial for burglary and larceny (*State v. Williams*, 196 Kan. 628, 513 P. 2d 1006). After all, a pistol is a weapon familiarly employed by a burglar or thief as a means of attack or escape, and under K. S. A. 21-2611 a convicted burglar or grand larcenist is one of that class who may not lawfully possess such a weapon.

The defendant here was charged with and tried for larceny in connection with a burglary. The felony relied upon for the charge of unlawful possession of the pistol was also larceny. We have always rejected, as prejudicial, evidence of another crime as proof that a person committed a crime upon a specified occasion. But we have always admitted such evidence of prior commission of crime upon proper limiting instructions when relevant to prove some other material fact including intent, plan, knowledge or identity. (K. S. A. 60-455; see also, *State v. McCorvey*, 199 Kan. 194, 428 P. 2d 762.) Conceivably, evidence of the prior conviction of defendant for grand larceny could have been admissible upon the instant trial for larceny in connection with the burglary.

The foregoing, in view of the record before us, impels us further to the conclusion no prejudice to defendant is shown to have occurred from the joinder, and the burden here remains on him to demonstrate prejudicial error. Moreover, the offenses did occur at the same time, and, to an extent, were provable by the same evidence.

In *State v. Browning*, 182 Kan. 244, 320 P. 2d 844 (appeal dismissed, 356 U. S. 583, 2 L. ed. 2d 1063, 78 S. Ct. 1002), the defendant was charged in one information with two counts of possession of a pistol after having been convicted of armed robbery, and in another information with four counts of armed robbery and one count of attempted robbery, all at different times. Over objection he was tried in a single trial for all the offenses contained in both informations. Upon appeal the same contentions were advanced

as here. This court affirmed the convictions, holding that the question of joinder of offenses rests in the sound judicial discretion of the trial court and that the trial court did not err in consolidating the two informations for trial. It should be pointed out the weapons which were the subject of the possession charges in *Browning* were shown to be the ones used in the armed robbery charges, but under our view this would not alter application of the *Browning* precedent to the case at bar. (See also, *State v. Hacker*, 197 Kan. 712, 412 P. 2d 40, cert. den., March 13, 1967, 386 U. S. 967, 18 L. ed. 2d 119, 87 S. Ct. 1050). We hold prejudicial error warranting the granting of a new trial is not shown by reason of the consolidation for trial.

Finally, defendant contends that before he could be convicted of the possession of the pistol charge under K. S. A. 21-2611 there should have been some specific showing the weapon was actually capable of being fired inasmuch as K. S. A. 21-2610 defines a pistol as a certain type of firearm. Defendant's contention has no merit. A pistol is a deadly weapon *per se*. Defendant states in his brief the pistol was "a rather dog-eared specimen at best." Such argument, if proper at all, should have been addressed to the trier of the fact to whom the pistol was submitted as an exhibit for consideration as a firearm. Although not necessary to sustain the conviction, the fact that defendant twice sought to conceal the pistol gives rise to some inference as to its prohibited character.

The foregoing disposes of the matters embraced in defendant's motion for new trial and his judgment of conviction and sentences must be and are affirmed.

APPROVED BY THE COURT.