No. 48,266

STATE OF KANSAS, *Appellee*, v. RICHARD B. BOONE, *Appellant*.

(556 P. 2d 864)

Opinion filed November 6, 1976.

*James D. Hopper,* of Wichita, argued the cause and was on the brief for appellant.

*Christopher A. Randall,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Robert L. Kennedy, Jr.,* assistant district attorney, were on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.:  This is an appeal from a conviction by jury of aggravated robbery (K. S. A. 21-3427).

At approximately 2:15 a. m. on August 9, 1974, two masked individuals entered the Town & Country Market at 600 South Oliver. One wore a fatigue jacket and what appeared to be a gas mask and brandished a double barreled sawed off shotgun. The other's head was covered with a ski mask. One store employee and a customer were in the store. Within a few minutes, the robbers took the money from a cash register, the safe and from the customer's purse and fled.

At 2:30 a. m., Wichita Police Officers Meyers and Knard, who were patrolling in the general area, were notified of the robbery. They drove to the robbery scene, and after conferring briefly with another officer already there, started circulating in the area. In a few minutes, the robbers' description came over the radio: two white males, one believed blond wearing a gas mask and army fatigue jacket; the second was larger and wore a dark colored ski mask. After a few more minutes the officers decided to return to a residence in the same area of the city where at approximately 2:00 a. m. that morning, they had seen the defendant Richard Boone coming out of the house as they drove by. They thought he had left the address in a tan stationwagon. The officers knew Boone had been involved in prior robberies and thought he might have been involved in this one.

Arriving at 4616 Ross Parkway at approximately 3:00 a. m., the officers found the house dark and no car on the street. They parked in an alcove across the street with the front of their marked patrol car about flush with the street and waited. It was raining. In a few minutes the tan stationwagon approached from the east. As it passed, the officers turned on their headlights, and the startled driver, Richard Boone, looked right at them. They pulled in behind Boone, and both cars stopped on the street in front of 4616 Ross Parkway. Boone immediately got out of the car and stood beside it. The officers got out of their car and approached Boone with guns drawn. Officer Knard advised Boone they were stopping him because there had just been a robbery, directed Boone to put his hands on the car and proceeded to give him a pat down for weapons. While this was going on, Officer Meyers went to the other side of the car and looked in through the windows aided by his flashlight. On the front floor board he observed a twenty dollar bill and a five dollar bill paperclipped together; the bills were wet. On the back floorboard he observed what looked like a gas mask. He

advised Officer Knard what he had found. Knard handcuffed Boone and then advised him of his rights under the *Miranda* decision. Knard asked Boone if he understood the rights, and Boone answered in the affirmative. Knard then asked Boone if, "having these rights in mind," he wished to talk to the officers. Boone's only response was that he wanted to talk to his attorney. Boone was then taken back and put in the patrol car out of the rain.

Officers Meyers and Knard requested a laboratory investigator to examine the car Boone had been driving. After another officer arrived to watch the car, they left, taking Boone and the gas mask with them, and proceeded back to the scene of the robbery. Shortly thereafter, a laboratory investigator for the Wichita Police Department arrived at 4616 Ross Parkway. His inspection of the tan Ford stationwagon revealed money later identified as coming from the robbed store.

Arriving at 600 South Oliver, Officers Knard and Meyers showed Boone and the gas mask to the robbery victims. They could not identify Boone, but said the mask looked like the one used in the robbery. Boone was then taken to the police station and was subsequently charged by information with two counts of aggravated robbery.

The district court consolidated for trial the instant information with another information against the defendant for an aggravated robbery on June 25, 1974. A jury trial commenced on December 3, 1974, with separate counsel defending Boone on each robbery charge. For the August 9, 1974, robbery, the jury returned a verdict of guilty on one count of aggravated robbery. The defendant now appeals this conviction contending four errors require reversal. The defendant made a separate appeal from his conviction for the June 25, 1974, robbery in *State v. Boone*, 220 Kan. 771, 556 P. 2d 880.

The appellant's first point on appeal is that it was prejudicial error to admit certain items into evidence, following the overruling of his oral motion to suppress, and over the objection of counsel, because they were the fruits of an illegal search. The items appellant contends were improperly admitted are the gas mask taken from the car by the arresting officers, money and a brown paper sack discovered in the car by the Wichita Police Department laboratory investigator, and money taken from the appellant at the police station. The appellant argues that his

arrest was illegal because it was not based on probable cause and that the subsequent search pursuant to the illegal arrest was likewise illegal and its fruits tainted.

The appellant correctly points out that K. S. A. 22-2401 requires probable cause for an officer to make an arrest without a warrant. Probable cause to justify an arrest or search without a warrant exists when the facts and circumstances known to the officer are sufficient to warrant a man of reasonable caution in the belief that an offense has been committed. *State v. Morin,* 217 Kan. 646, 538 P. 2d 684. Appellant contends the officers stopped and arrested him on mere suspicion.

The state agrees that the stop was made on mere suspicion, but that it was proper under the stop and frisk statute (K. S. A. 22-2402[1]) which allows a law enforcement officer to stop any person in a public place, without making an arrest, when he *reasonably suspects* the person has committed a crime. The state contends the officers had sufficient information to reasonably suspect the appellant had committed the robbery. After properly stopping appellant, and while the officers were in a place they had a right to be, they observed fruits and instrumentalities of the robbery in plain view in appellant's car. This, the state says, provided ample probable cause to make the arrest and subsequent search. We agree.

The Fourth Amendment to the United States Constitution and Section Fifteen of the Bill of Rights of the Kansas Constitution proscribe "unreasonable" searches and seizures. These constitutional provisions apply to "stop and frisk" procedures. *City of Garden City v. Mesa,* 215 Kan. 674, 527 P. 2d 1036. The central inquiry under the Fourth Amendment is the reasonableness, under all the circumstances, of the particular governmental invasion of a citizen's personal security. *Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889. This court has recognized that under appropriate circumstances, a police officer may approach and stop a person in an appropriate manner for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *State v. Jackson,* 213 Kan. 219, 515 P. 2d 1108.

In *State v. Jackson,* supra, we reviewed certain United States Supreme Court decisions on stop and frisk and stated:

"The gist of the [*Adams v. Williams,* 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. 2d 612] opinion is that the stop of a suspicious person may be reasonable if coupled with some facts known to the officer." *Id.* at 224, 515 P. 2d at 1113.

We then set out the rule governing the propriety of police action under K. S. A. 22-2402 (1):

"[T]he 'stop' authorized by 22-2402 requires that a law enforcement officer must have prior knowledge of facts or observe conduct of a person which causes the officer to reasonably suspect that such person is committing, has committed, or is about to commit a crime." *Id.* at 225, 515 P. 2d 1113.

The threshold question in the case at bar is whether the officers had sufficient information when they stopped the appellant to reasonably suspect he had just committed a crime.

The evidentiary record shows that the officers had been watching the residence at 4616 Ross Parkway for some time because they were suspicious of several of the people who lived there and frequented that address. Neighbors and other officers kept them informed of who they knew was living there. The officers knew the tan '64 Ford stationwagon belonged to Janet Moore, who lived at that address. They knew Boone lived at 4616 Ross Parkway. On August 8, they had stopped to help Boone when he was having car trouble; he gave 4616 Ross Parkway as his address. The officers knew that Boone had been involved in prior robberies. He had been charged with aggravated robbery of another Town & Country Market in Wichita on June 25, 1974, and released on bond.

At 2:00 a. m. that morning, the officers had driven by 4616 Ross Parkway on routine patrol. As they drove by, they observed defendant Richard Boone standing just inside the front door with his hand on the screen door. There were two people behind him whom the officers could not identify. They both had long hair, but could have been either men or women. The only car parked on the street was the tan Ford stationwagon. The officers drove around the block and passed by 4616 Ross Parkway again in two or three minutes. This time the house was dark and the tan car was gone.

The officers knew the robbery had been committed by two white individuals. The residence at 4616 Ross Parkway is in the same area of the city as the robbed store. The hour was late, and it was raining. Few people were out.

On the basis of this evidence we have no hesitancy in holding that, in making the initial stop of the appellant, the officers had a reasonable suspicion that a crime had been committed by the occupant of the vehicle as required by K. S. A. 22-2402 (1). See *State v. Jackson,* supra and Annot., Law Enforcement Officer's Authority, under Federal Constitution, to "Stop and Frisk" Person —Supreme Court Cases, 32 L. Ed. 2d 942 (1973).

Since the stop of appellant was proper under K. S. A. 22-2402 (1), the officer had a right to be next to the appellant's car parked on a public street when he observed the gas mask and money in plain view through the window. Seeing these fruits and instrumentalities of the robbery gave the officers probable cause to justify a warrantless arrest.

This court was presented with an analogous situation in *State v. Morin*, 217 Kan. 646, 538 P. 2d 684. There officers had reasonable suspicion that the occupant of a truck they stopped had committed a crime. After finding a gun in the pat down search and seizing it, the officers looked through a window of the vehicle and observed a brown plastic bag matching the description of one used by the robber. The court said "[i]t is clear to us that at this point the officers had probable cause to arrest the defendant . . ." *Id.* at 650, 538 P. 2d at 687.

The appellant contends that when the officers confronted him with guns drawn, his freedom to leave was restrained and he was under arrest. Since at that moment the officers had only a reasonable suspicion of his involvement in a crime, but not probable cause to arrest, the appellant asserts his arrest was illegal and all fruits of the subsequent search tainted. We do not agree.

When a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person. *City of Garden City v. Mesa*, supra. There can be a "seizure" of a person in the Fourth Amendment sense even where there is no formal arrest. *Terry v. Ohio*, supra.

"Arrest" as defined in the Kansas Code of Criminal Procedure contemplates more than the temporary restraint of a person by a law enforcement officer. Rather, it is the restraint of a person in order that he or she may be forthcoming to answer for the commission of a crime. See K. S. A. 22-2202 (3) (1975 Supp.) and K. S. A. 22-2202 (7) (1975 Supp.).

When Officers Meyers and Knard initially restrained the appellant, we believe their purpose was to temporarily detain him so as to investigate possible criminal behavior. Officer Meyers testified that Boone was initially restrained before he went around the car and looked into the windows, but that "we didn't place him under arrest at that time. . . ." It was only after the officers observed items which appeared to implicate the appellant in the robbery that he was handcuffed and read his rights. It was at that point that his restraint satisfied the statutory definition of arrest.

Our holding that his arrest was proper disposes of the only basis appellant advanced for suppressing the money taken from him at the police station.

The gas mask was properly seized by the arresting officers under the plain view doctrine. Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence. *State v. McMillin*, 206 Kan. 3, 476 P. 2d 612. Such a view does not constitute a search even if it is nighttime and the object is seen in the light of a flashlight through a car window. *State v. Karney*, 208 Kan. 677, 494 P. 2d 1204; *State v. Frizzell*, 207 Kan. 393, 485 P. 2d 160; *see State v. Garcia*, 210 Kan. 806, 504 P. 2d 172.

Likewise, the money and paper bag were properly seized by the police laboratory investigator. In *State v. Frizzell*, supra, this court held:

"There is probable cause to search when there exist facts and circumstances sufficient to warrant a reasonable prudent man to believe that an automobile contains contraband or items which offend against the law." (Syl. 3.)

In *State v. Undorf*, 210 Kan. 1, 7, 499 P. 2d 1105, we said:

"[I]n *Chambers v. Maroney*, [399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975] the court made clear that the same knowledge providing probable cause for an arrest may also furnish probable cause for a search. Referring to *Carroll v. United States*, supra, the Court said (399 U. S. at 49):

" 'The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

" ' "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." 267 U. S., at 158-159.'

"The upshot is that if there is probable cause to search a car such search need not be 'incidental to' or 'contemporaneous with' an arrest, but may be made wholly independently of any arrest at all."

In the case at bar, the arresting officers had probable cause to believe the appellant had committed a crime and that the car he was driving contained fruits and instrumentalities of that crime. The possibility existed that the car might be moved or evidence removed; appellant's yells had alerted occupants in the house that he was being arrested. We view the warrantless seizure of items in appellant's car by the laboratory investigator shortly after the appellant was arrested as properly made in a search based on probable cause. See *State v. Morin*, supra, and cases cited therein.

The appellant's second point on appeal is that it was prejudicial error for the district court, during the presentation of evidence pertaining to the offense charged in the second information, to admit into evidence a knife allegedly used in the offense charged in the first information and having no connection with the second offense.

Two separate informations charging the defendant with aggravated robberies on June 25, 1974, and on August 9, 1974, were consolidated for trial on the prosecutor's motion which was neither opposed nor objected to by the defendant. No challenge as to propriety of consolidation is raised on appeal, and it appears to have been within the authority of the district court under K. S. A. 22-3202 and 3203. Both informations were tried to the same jury which returned separate verdicts for each offense. The state and the appellant presented their case and rested on the June 25 robbery and then repeated that procedure for the August 9 robbery. At oral argument we were advised that final arguments were made after both cases were submitted. There were two separate final arguments.

The June 25 robbery was committed with a knife; the August 9 robbery with a shotgun. During presentation of the state's evidence for the June 25 robbery, a knife was admitted into evidence over defendant's objection that there was insufficient foundation for its admission. This point is the main contention of error in appellant's appeal from the conviction for the June 25 robbery and will not be discussed here. See *State v. Boone*, 220 Kan. 771, 556 P. 2d 880.

During the presentation of evidence for the August 9 robbery, the prosecutor asked the police laboratory investigator who searched the stationwagon to identify a knife he had found in the car. This knife was the one previously admitted in evidence for the June 25 robbery. Following a discussion by the court and counsel out of hearing of the jury, the officer was allowed to identify the knife and testify that he found it in the car's glove compartment. The knife was then admitted into evidence in the August 9 robbery case on the court's suggestion "so there won't be any confusion about it as far as the record or the jury is concerned." Counsel's objection to the knife's admission went essentially to lack of relevancy and materiality.

While we have no quarrel with the appellant that the knife was neither relevant nor material to the second robbery, it does not

necessarily follow that the knife's admission was reversible error. All the evidence against the appellant was presented at one trial to one jury. 24B CJS *Criminal Law* § 1915(14) (b) states:

"Error in admitting evidence without proper foundation or preliminary proof is cured by the subsequent introduction of the requisite predicate or preliminary proof."

See *Samuels v. United States*, 397 F. 2d 31 (10th Cir. 1968); *State v. Renneker*, 75 Kan. 685, 90 P. 245.

Furthermore, error in admission of the knife, if any, could have been cured by proper instructions. P. I. K. Criminal 68.07 deals with verdict instruction for multiple counts. It indicates that each crime charged is a separate offense and the jury must decide each charge separately on the evidence and the law applicable to it, uninfluenced by their decision as to any other charge.

No instructions are included in the record on appeal, but we were advised by counsel at oral argument that separate instructions were given. Counsel "thought" an instruction was given to the effect that evidence of one case could not be considered in the other.

In *State v. Omo*, 199 Kan. 167, 172, 428 P. 2d 768, we said that where the instructions are not abstracted and where there is no contention to the contrary, this court must assume the instructions given were correct and that the jury was properly instructed as to how it should consider the evidence as to each separate offense charged.

It must be conceded that the second admission of the knife was potentially confusing to the jurors and potentially prejudicial. Nevertheless, under the rule of *Omo*, we must assume the jury was properly instructed on how it should consider the evidence, thereby reducing the prejudicial effect of any error. Consolidation in the instant case was unopposed by the appellant; he has failed to show how the second admission of the knife in the consolidated trial resulted in substantial prejudice requiring reversal.

The appellant's third point on appeal is that it was prejudicial error to allow one of the arresting police officers to testify in rebuttal concerning a statement made by appellant in response to the officer's question only a short time after appellant had been given his *Miranda* warnings and had stated he wanted to see his attorney.

The *Miranda* warnings were given by one officer immediately after he handcuffed appellant following discovery of the gas mask

in the car. Appellant stated he wanted to see his lawyer. The two officers and appellant then got in the squad car and drove back to the scene of the robbery. While the three were in the squad car, one of the officers asked the appellant where he had gone when he left 4616 Ross Parkway at 2:00 a. m. that morning. Appellant answered the question saying he had taken a friend to a club. At trial, appellant testified that he had not been at 4616 Ross Parkway that morning until he arrived shortly after 3:00 a. m. The prosecution then put the officer on in rebuttal, and he testified as to appellant's conflicting statement.

Appellant's statement elicited after he stated he wanted to see his attorney would clearly not be admissible in the prosecution's case in chief as substantive evidence to prove guilt or innocence. The procedural safeguards triggered by a request for an attorney which are mandated by *Miranda* were recently noted in *Michigan v. Mosley,* 423 U. S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975). After a request to see an attorney is made, all questioning must cease until an attorney is present. 46 L. Ed. 2d at 320, n. 7. In the instant case, no attempt was made by the prosecution to introduce the statement in its case in chief.

Evidence which is inadmissible in the case in chief because of noncompliance with *Miranda* requirements may, however, be used for impeachment under certain circumstances. *Harris v. New York,* 401 U. S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), held that statements of a defendant obtained in violation of *Miranda* rules, so as to render them inadmissible to establish the guilt of the defendant, may be used for purposes of impeachment where (1) such statements are inconsistent with defendant's trial testimony bearing directly on the crimes charged, and (2) defendant makes no claim that his statements were coerced or involuntary. *See* 5 Am. Jur. Trials, Excluding Illegally Obtained Evidence, § 32, p. 99 (1976 Supp.).

The state points to *State v. Osbey,* 213 Kan. 564, 517 P. 2d 141, and *State v. Andrews,* 218 Kan. 156, 542 P. 2d 325, which applied *Harris* and argues that appellant's inconsistent statements were properly admitted in rebuttal. The underlying rationale of these cases was explained in *State v. Osbey,* supra:

"[T]he shield provided by *Miranda* [should] not be perverted into a license to use perjury by way of a defense, free from risk of confrontation with prior inconsistent utterances." 213 Kan. at 574; 517 P. 2d at 149.

A recent United States Supreme Court decision bears directly on the case at bar. In *Oregon v. Hass,* 420 U. S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975), the defendant also made a statement—after he was arrested, after he was given his *Miranda* warnings and after he requested an attorney—that was inconsistent with his testimony at trial. The Supreme Court could see no valid distinction in the application of the principles of *Harris* to that case and to Hass' case. The police officer's rebuttal testimony concerning the defendant's inconsistent statement was ruled to be properly admissible for the sole purpose of impeaching the defendant's trial testimony where (1) defendant's testimony at his trial was made after he knew that the officer's opposing statements had been ruled inadmissible for the prosecution's case in chief, and (2) there is no evidence or suggestion that the defendant's inculpatory statements given to the officer were involuntary or coerced.

The Court stated:

"The effect of inadmissibility in the *Harris* case and in this case is the same: inadmissibility would pervert the constitutional right into a right to falsify free from the embarrassment of inpeachment evidence from the defendant's own mouth.

"One might concede that when proper *Miranda* warnings have been given, and the officer then continues his interrogation after the suspect asks for an attorney, the officer may be said to have little to lose and perhaps something to gain by way of possibly uncovering impeachment material. This speculative possibility, however, is even greater where the warnings are defective and the defect is not known to the officer. In any event, the balance was struck in *Harris,* and we are not disposed to change it now. If, in a given case, the officer's conduct amounts to abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness." 420 U. S. at 723, 43 L. Ed. 2d at 578, 95 S. Ct. at 1221.

We are of the opinion that the officer's conduct in the case at bar does not amount to abuse. There is no showing of coercion. As noted in *Hass,* ". . . the pressure on [the defendant] was no greater than that on any person in like custody or under inquiry by any investigating officer." *Id.* Likewise, there is no showing the statement was involuntary. The officer asked a question and the appellant answered. In *State v. Colin,* 214 Kan. 193, 519 P. 2d 629, we stated that generally if the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary. Therefore, we hold the appellant's incon-

sistent statement was properly admitted for the purpose of impeachment.

The appellant's final specification of error is that the trial court erred in refusing to give a requested instruction. This point is not well taken.

A defense witness, cross-examined about a prior conviction, seemed to express some confusion about thinking this conviction which occurred when he was 20 years old could or would be "cleared." At the close of all the evidence, counsel for appellant made an oral request for an instruction on expungement of convictions because of the witness's misunderstanding. The request was denied.

In *State v. Reed*, 213 Kan. 557, 562, 516 P. 2d 913, 918, we said:

"[A] request for an instruction is required to be in writing under K. S. A. 1972 Supp. 22-3414 (3). There is no statutory provision for an oral request for an instruction."

We would also note there was absolutely no evidence advanced that the witness's prior conviction actually had been annulled. A person's conviction is annulled under K. S. A. 21-4616 only after judicial inquiry and ruling. Only then may he state that he has never been convicted of such crime when he appears as a witness. See *State v. Miller*, 214 Kan. 538, 520 P. 2d 1248.

The judgment is affirmed.