No. 60,988

STATE OF KANSAS, *Appellee*, v. RONALD GRAHAM, *Appellant*.

(768 P.2d 259)

Opinion filed January 20, 1989.

*Thomas Jacquinot*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, deputy appellate defender, and *Benjamin C. Wood*, chief appellate defender, were with him on the briefs for appellant.

*Steven L. Opat*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Ronald Graham appeals his convictions of one count of possession of methamphetamine, K.S.A. 1987 Supp. 65-4127b(b)(2); one count of possession of marijuana, K.S.A. 1987 Supp. 65-4127b(a)(3); and one count of possession of cocaine, K.S.A. 65-4127a. Due to two prior narcotics convictions, Graham was sentenced to life imprisonment. K.S.A. 65-4127a.

On November 6, 1986, Junction City police officer James Nixon, knowing that he had issued Ronald Graham a traffic ticket for driving with a suspended license, stopped a blue Camaro driven by Graham. The car was registered in the name of Alan Marks. Aware that a bench warrant had been issued for Graham's arrest that morning because of Graham's failure to appear for his court date, Nixon arrested Graham.

Nixon noticed that Graham's eyes appeared irritated and were extremely bloodshot. Nixon then searched Graham for weapons

and contraband. In the watch pocket of the jeans Graham was wearing, Nixon found a plastic packet containing cocaine residue. In the lower right pocket of the black jacket Graham was wearing, Nixon found a plastic sandwich bag with eight small plastic packages containing cocaine. Between the bucket seat on the driver's side and the center console, the officer found a large plastic bag containing a large amount of methamphetamine. Within the center console, Nixon found another plastic bag containing marijuana. Finally, Nixon found three hand-rolled marijuana cigarettes. After Graham was booked into jail, another packet of marijuana was discovered in the jacket.

At Graham's trial, the State presented three witnesses, including Officer Nixon, who testified regarding the arrest. Certified copies of Graham's two prior narcotics convictions were also admitted into evidence.

Graham took the stand and testified that, on the day before his arrest, he and a friend, Steve Miller, were doing body work on the Camaro which belonged to their friend Alan Marks. He further stated that, after working on the car, he and Miller went to a club to have drinks. They left the club about 11:30 p.m. and ran into Alan Marks, who borrowed Graham's jacket.

Graham further testified that he spent the night at Miller's house. Waking during the night, he discovered that he had urinated in his pants. He went to the bathroom, disrobed and washed, and went back to sleep. Upon awakening the next day, he realized he was late for his court appearance. Since his pants were still wet, he put on Miller's pants, his own shirt, and Miller's jacket. He then drove Alan Marks' Camaro in the direction of the courthouse and was stopped by Officer Nixon. Graham stated that, when he was stopped by the officer, he believed his eyes appeared red and irritated because he had not worn glasses while working on Marks' automobile and may have received some weld burns to his eyes.

Though Graham had contended that (1) all the contraband found was located in clothing which did not belong to him and in an automobile which was not his, and (2) he had no knowledge of the presence of or intent to possess any of the drugs, the jury convicted him of one count each of possession of marijuana, possession of methamphetamine, and possession of cocaine. He appeals, raising numerous issues.

Initially, Graham argues that the admission of the certified copies of his two prior narcotics convictions and the testimony of two witnesses regarding some of the occurrences surrounding those convictions were erroneously introduced in the State's case in chief solely to prove his disposition to commit the offenses charged. The State claims the evidence of Graham's prior convictions was properly admitted to show knowledge, intent, and absence of mistake or accident under K.S.A. 60-455, which provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In ruling on the admissibility of other crimes evidence under K.S.A. 60-455, the trial court must: (1) determine if the evidence is relevant to prove one of the facts specified in the statute; (2) determine that fact is a disputed, material fact; and (3) balance the probative value of the prior conviction evidence against its tendency to prejudice the jury. *State v. Breazeale*, 238 Kan. 714, 719, 714 P.2d 1356, *cert. denied* 479 U.S. 846 (1986) (citing *State v. Myrick & Nelms*, 228 Kan. 406, 420, 616 P.2d 1066 [1980]; *State v. Bly*, 215 Kan. 168, 523 P.2d 397 [1974]).

Here, Graham is charged with possession of a controlled substance. Proof of possession is an essential element of the State's burden. The Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.*, does not define "possession." See K.S.A. 21-3102[1]. In *State v. Neal*, 215 Kan. 737, 740, 529 P.2d 114 (1974), we cited with approval PIK Crim. 53.00 (now PIK Crim. 2d 53.00), which defines "possession" as having control over a place or thing with knowledge of and the intent to have such control. See *City of Hutchinson v. Weems*, 173 Kan. 452, 249 P.2d 633 (1952); *State v. Metz*, 107 Kan. 593, 193 Pac. 177 (1920). This definition was also approved in *State v. Adams*, 223 Kan. 254, 256, 573 P.2d 604 (1977).

Because Graham's possession of the illegal substance itself may be susceptible to two interpretations, one innocent and the other criminal, then the intent with which the act was committed becomes the critical element in determining its character. *State*

*v. Nading,* 214 Kan. 249, 254, 519 P.2d 714 (1974). Both knowledge and absence of mistake are factors relevant to intent. Knowledge signifies awareness and is a requirement for "possession." Knowledge of the presence of a narcotic or dangerous drug as embraced within the concept of physical control with the intent to exercise such control is essential. 28 C.J.S., Drugs and Narcotics Supplement § 160, p. 235. Absence of mistake simply denotes an absence of honest error; evidence of prior acts illustrates the doing of the criminal act in question was intentional. Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma,* 20 Kan. L. Rev. 411 (1972). See *State v. Faulkner,* 220 Kan. 153, 156-57, 551 P.2d 1247 (1976).

First, we will examine whether the certified copies of Graham's two prior convictions could be admitted under 60-455 to raise an inference that he was familiar with the controlled substance and had knowledge of and intended to exercise control over the substance. In *State v. Faulkner,* 220 Kan. 153, the defendant claimed that, without a showing of the underlying facts and circumstances of the prior offense, the admission of the journal entry of judgment of his prior drug convictions to show intent, knowledge, and absence of mistake was improper. There, we found that the admission of the journal entry of judgment to show intent, knowledge, and absence of mistake, without a showing of the underlying facts and circumstances of the prior offense, was properly within the trial court's discretion. Here, unlike in *Faulkner,* sufficient evidence was presented to show the similarity of Graham's prior offenses. Therefore, the admission of the two certified copies of Graham's two prior convictions to show intent or knowledge was correct.

Without citations for support, Graham further attempts to distinguish the admission of the certified copies of his prior convictions into evidence under *Faulkner* by a somewhat convoluted argument that *Faulkner* only applies to specific intent crimes. We disagree with this argument. K.S.A. 60-455 does not distinguish between specific intent and general intent crimes, but rather provides that other crimes evidence is admissible on the issue of "intent." In addition, in *State v. Crowley,* 220 Kan. 532, 552 P.2d 971 (1976), we held admissible a prior conviction for simple possession where the defendant was charged with intent to possess heroin.

The crucial distinction in admitting other crimes evidence under 60-455 on the issue of intent is not whether the crime is a specific or general intent crime, but whether the defendant has claimed that his acts were innocent. Where criminal intent is obviously proved by the mere doing of an act, the introduction of other crimes evidence has no real probative value to prove intent. *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974). In *Bly*, we reasoned that, where an armed robber extracts money from a store owner at gunpoint, his felonious intent is obvious from the act itself and is not really in dispute. Hence, evidence of other robberies to prove intent should not be admitted since the element of intent is not really at issue in the case. 215 Kan. at 176.

Where illegal possession of drugs is charged, however, intent may be the only issue. In that instance, the similarity of the prior offense to the crime charged is a key factor when determining whether that evidence is relevant. Here, Graham's intent was the sole issue and the prior crimes evidence was properly admitted under K.S.A. 60-455 to show knowledge, intent, and absence of mistake or accident.

Next, we must determine whether the testimony of the two witnesses about some of the occurrences surrounding the narcotics conviction was erroneously admitted during the State's case in chief. David Platt, the prosecuting attorney in the 1983 case, testified he was present at the preliminary hearing where Graham testified that the cocaine found in his shirt pocket must have belonged to someone else, since he had been at a party, taken his shirt off, and then presumably put on someone else's shirt. Platt further testified that, after Graham was bound over for trial, he failed to appear for trial and a bench warrant was issued for Graham's arrest. Two years later, Graham was arrested and pled guilty to one count of possession of cocaine.

Regarding the 1985 conviction, an Arkansas police officer testified he stopped an automobile in which Graham was a passenger and found cocaine in the car. When the car was stopped, Graham was wearing a leather jacket identical to the one Graham was wearing when arrested by Officer Nixon. The Arkansas police officer further testified that Graham pled guilty to the crime of possession of cocaine with intent to deliver.

The trial court conducted a lengthy pretrial hearing prior to

admitting evidence of Graham's 1983 conviction for possession of cocaine and his 1985 conviction for possession of cocaine with intent to deliver. After hearing the testimony, the trial judge found that the evidence was relevant to prove one of the facts specified in the statute and that the fact was disputed and material. The trial judge did not abuse his discretion by admitting the evidence of the prior crimes to show Graham's intent and/or absence of mistake or accident.

Graham also claims that the probative value of his prior convictions was not sufficient to overcome the prejudicial effect of their admission. Although evidence of prior crimes is always prejudicial to some extent, this prejudice may be overbalanced by the probative value of the evidence on the crucial issues in the case. After determining that the other crimes evidence is relevant to prove a material fact in issue, the court must then weigh the prejudicial impact of the evidence under K.S.A. 60-445. By exercising its discretion, the court can exclude other crimes evidence if it finds its probative value is substantially outweighed by its prejudicial effect, or if the evidence confuses the issues or misleads the jury. *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973).

Here, the trial court found that the probative value of the evidence was not substantially outweighed by its prejudicial effect. The evidence did not confuse the issues or mislead the jury and the jury was properly instructed to consider the prior crimes evidence only on the issue of Graham's intent and/or absence of mistake or accident. The trial court did not err by admitting evidence of the two prior drug convictions.

Next, Graham argues the trial judge admitted improper rebuttal testimony of two of the State's witnesses which he claims did not refute a fact he placed in evidence or a fact he attempted to prove. We disagree.

Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts witnesses on the opposite side, but

also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears its discretion has been abused. *State v. Willis*, 240 Kan. 580, 583, 731 P.2d 287 (1987).

Graham, after waiving his constitutional right not to testify, took the stand and admitted that his prior problems with drugs had resulted in two convictions. Graham stated he was unaware of the presence of the drugs until after Officer Nixon found them. On cross-examination, Graham theorized that the drugs probably belonged to the owner of the jacket. Graham further testified that he could not recall if he had testified during his preliminary examination for the 1983 charge of cocaine possession.

After the defense had rested, the Geary County prosecutor, David Platt, who had previously testified, was called as a rebuttal witness. Over Graham's objection, Platt related that, during Graham's 1983 preliminary examination, as in this case, Graham had claimed he did not know there were drugs in the pocket of the shirt he was wearing until the law enforcement officers found them. Platt stated Graham had testified that "the shirt was shared by he and three roommates and that there were a number of people that had been at their apartment that night, and that they'd had a party and the shirt had been laying there at some time and he put it on prior to leaving and being arrested on a traffic offense."

Platt's testimony rebutted Graham's testimony that he did not know the drugs were in the clothes or the car. The testimony created a logical and permissible inference that Graham, having used the defense for a charge to which he ultimately pled guilty, was attempting to utilize that defense again. The rebuttal evidence buttressed the State's contention that Graham's possession of the drugs was knowing and intentional. We find no abuse of discretion in the admission of Platt's testimony.

During its case in chief, the State sought to introduce defendant's incriminating post-arrest statements made to Officer A. B. Farrow while defendant was in jail. At a *Jackson v. Denno* hearing outside the presence of the jury, Farrow testified that after Graham's arrest he spoke to Graham for two and one-half hours at the Geary County jail about an investigation he was conducting regarding Kent Lakin, who had died in a bomb

explosion. Farrow stated that in the course of the conversation Graham told him Lakin had been building a bomb to kill Officer Nixon. Farrow testified that later in the conversation Graham stated that, as many times as Officer Nixon had tried to catch him with drugs, sooner or later Nixon was bound to get lucky. Graham also admitted to Farrow he had sold methamphetamine and cocaine and had set up a known local drug dealer in business.

Farrow testified he had not planned to discuss the charges against Graham; that Graham's statements were not solicited, but voluntary; and that no immunity was promised. The trial judge then ruled that the statements were not admissible in the State's case in chief because they had been obtained during a custodial interrogation without complying with the *Miranda* procedure. The judge withheld a ruling on whether the statements would be admitted as rebuttal evidence.

Subsequently, after Graham had testified, the State sought to introduce the statements to rebut Graham's testimony. The trial judge held Graham's admissions of drug dealing were inadmissible, but, under *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971), Graham's statement that Officer Nixon was bound to get lucky and catch him with drugs sooner or later was proper rebuttal testimony and could be used to impeach Graham's testimony.

In *Harris*, the United States Supreme Court held that admissions made by the accused to police officers, which were inadmissible in the State's case in chief to establish guilt due to noncompliance with *Miranda* rules, could be used for impeachment where (1) such statements are inconsistent with defendant's trial testimony bearing directly on the crimes charged, and (2) the accused makes no claim that his statements were coerced and involuntary.

We applied *Harris* in *State v. Osbey*, 213 Kan. 564, 517 P.2d 141 (1973), where the issue was the admission of the accused's pretrial written inculpatory statement. Paraphrasing *Harris*, we held that, although the statement was not admissible in the State's case in chief since there had been no determination of the voluntariness of the confession, it could be used for impeachment. 213 Kan. at 574. See *State v. Boone*, 220 Kan. 758, 556 P.2d 864 (1976); *State v. Andrews*, 218 Kan. 156, 542 P.2d 325 (1975); *State v. Greene*, 214 Kan. 78, 519 P.2d 651 (1974).

In *State v. Roberts*, 223 Kan. 49, 574 P.2d 164 (1977), we recognized the constitutional limitation on the admission of confessions or inculpatory statements as impeachment evidence after a trial court has determined the statements were involuntary or coerced. In *Roberts*, the trial court found that the defendant's inculpatory statement had been coerced by promises of leniency and ruled them inadmissible in the State's case in chief. Subsequently, however, the trial court admitted the coerced statement as rebuttal evidence to impeach the defendant's credibility. We reversed the trial court, finding that the purpose for the distinction made in permitting such a statement or confession in evidence for impeachment purposes and not in the State's case in chief rests on the different bases for the exclusions. We stated:

"When a statement or confession is found to be involuntary it is excluded from evidence because it is unreliable and not trustworthy. A coerced confession is not based on knowledge and truth for it originates from coercion and a personal desire of the defendant to alleviate existing pressures. On the other hand a statement or confession may be excluded from evidence in the state's case in chief if *Miranda* warnings were not given or if no hearing was held to determine its voluntary nature. These reasons for exclusion are not based on the fact the statement is unreliable or untrustworthy. The statements are withheld from evidence in the state's case in chief as a sanction for failure to warn a defendant or for failure to hold the hearing required. When the defendant who made such a statement takes the stand as a witness the facts surrounding the taking of the statement may be brought out and the reliability and trustworthiness of the prior statement may be fully explored including the effect of a failure to warn. The previous sanction imposed is removed in the interest of truth and justice." 223 Kan. at 57.

Therefore, when a trial court has determined that a confession is coerced, the statement is untrustworthy and may not be used for any purpose. *Roberts*, 223 Kan. at 58. *Roberts* is in agreement with United States Supreme Court cases which have held that coerced confessions or statements, being inherently untrustworthy, are inadmissible for any purpose, including impeachment. See *Mincey v. Arizona*, 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978); *Payne v. Arkansas*, 356 U.S. 560, 2 L. Ed. 2d 975, 78 S. Ct. 844 (1958). Further, when such evidence is erroneously admitted, the error is of such constitutional magnitude that the courts are precluded from applying the harmless error rule. Such cases require automatic reversal. See *Rose v. Clark*,

478 U.S. 570, 579-80, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986); *Chapman v. California*, 386 U.S. 18, 23, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967).

In each of these cases, however, the facts demonstrated defendant's statements to be the product of coercion and/or police trickery. In *Mincey v. Arizona*, for example, police persisted in interrogating the defendant while he lay in a hospital bed attached to a breathing apparatus, despite defendant's numerous protestations and requests for counsel. In *Payne v. Arkansas*, the defendant was held incommunicado for three days by police, who used false threats culminating in a threat of mob violence to obtain a confession. In *State v. Roberts*, 223 Kan. 49, the defendant's statements were obtained by promises of leniency. In each case, the issue of voluntariness was determined from the totality of the circumstances with the inquiry focused upon whether the statement in question was the product of free and independent will or whether the defendant was deprived of his free choice to admit, deny, or refuse to answer. See *State v. Creekmore*, 208 Kan. 933, 495 P.2d 96 (1972).

Graham, as did the defendant in *Roberts*, argues that, because the trial court made a finding his statement was involuntary, it was inadmissible for any purpose. The State points out that the trial court made no express finding that Graham's statement was coerced and involuntary; rather, the trial court found that the statement was made in violation of *Miranda*. The State then distinguishes *Roberts*, because unlike Roberts' statement Graham's statement was not elicited by any coercion, promises, or threats.

The trial court specifically ruled:

"[T]he State has not in any way shown the relevant factors to voluntariness as required by *Jackson versus Denno* or any compliance with the *Miranda* warnings . . . . There is no evidence that this particular defendant initiated the conversation or wanted to in any way have the conversation."

Here, the trial court determined that the statements would not be admitted into evidence in the State's case in chief, but made no specific finding that Graham's statements were coerced. Officer Farrow entered the defendant's cell to discuss a crime unrelated to the crime with which Graham was charged. Graham was not a suspect in the unrelated crime. Graham spoke freely and at no time indicated an unwillingness to continue the con-

versation. There is no evidence to indicate Graham was coerced by promises or that the officer's acts were deceptive. The mere fact that Farrow visited Graham in his cell and asked questions is not coercive and does not render Graham's statements inadmissible.

Because Graham's statements were made without the benefit of a *Miranda* warning, the trial court correctly determined that they were inadmissible in the State's case in chief. However, the shield provided by *Miranda* may not be perverted into a license to use perjury by way of a defense, free from risk of confrontation with prior inconsistent utterances. *Harris v. New York*, 401 U.S. at 225-26. Since there is no evidence the statement concerning Officer Nixon catching defendant with drugs was involuntary or coerced, the trial court did not abuse its discretion by allowing the statement to be used as rebuttal.

Graham also argues that, even if the statement was voluntary, it could not be used to impeach his testimony since it offered no direct contradiction to his testimony. In *State v. Watkins*, 219 Kan. 81, 547 P.2d 810 (1976), the defendant argued that the State erred in cross-examining him upon inconsistencies in prior statements because portions of the testimony elicited by the prosecutor were not in direct contradiction to his prior statements. We stated that since all the testimony elicited *tended* to impeach the defendant, no abuse of discretion or prejudice had been shown. 219 Kan. at 86.

Similarly here, Graham took the stand and testified that the first time he saw the drugs in question was after Officer Nixon stopped the car and began pulling the drugs out of his clothes and from the car. He stated that, prior to Officer Nixon producing the various packages of drugs, he had never laid eyes on them. This testimony tended to contradict his statement to Officer Farrow that, as many times as Officer Nixon had tried to catch him with drugs, sooner or later he was bound to get lucky and catch him with some. Therefore, no abuse of discretion or prejudice is shown.

Graham next claims that the trial judge improperly instructed the jury on possession. Two hours after the jury had retired to deliberate, it submitted the following question to the court:

"Presence of clothing is proven but proof that the defendant had knowledge of the presence, I do not believe can be proven. Must there be a unanimous agreement to finalize case at this point on possession?"

The court, with the agreement of both counsel, directed the jury to the instructions for the answer to the question. The jury then inquired what the "next legal recourse" would be if no unanimous verdict could be reached. The court questioned the jury and, after determining that there was no deadlock, allowed the jury to continue to deliberate.

Approximately two hours later, the court received a third inquiry from the jury which read: "Your honor, will you provide the legal definition of possession in this case." Both counsel suggested PIK Crim. 2d 53.00, which defines possession as: "[h]aving control over a place or thing with knowledge of and the intent to have such control." The court believed that its instructions to the jury defined the element of "intent" and that further instruction would be repetitive. The court then responded: "Possession is defined as knowledgeably having control over a place or thing." A few minutes later, the jury returned a guilty verdict.

The PIK definition is derived from Kansas cases which hold that knowledge of the presence of a controlled substance is not sufficient for a conviction for possession of that substance. In addition to requiring mere knowledge of the presence of the controlled substance or mere physical control, a conviction for possession requires the jury to find the accused had an intent to exercise control over the substance. See *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (1983); *State v. Faulkner*, 220 Kan. 153, 551 P.2d 1247 (1976); *State v. Metz*, 107 Kan. 593, 193 Pac. 177 (1920).

Graham correctly states the definition of "possession" provided by the trial judge is not an exact replica of the definition approved in PIK Crim. 2d 53.00. However, Graham's argument that the definition allowed the jury to find him guilty without finding the element of intent is without merit. The court instructed that possession was "knowledgeably" having control over the drugs. "Knowledgeably" is a common word which the court used in its everyday meaning: with knowledge, knowingly, or with intent. Thus, the jury was instructed to find that the defendant had to know he had the drugs and that his possession of the drugs was not due to a mistake or accident. This instruction is a clear statement of the law and did not mislead the jury.

See generally *State v. Lee*, 221 Kan. 109, 111-12, 558 P.2d 1096 (1976).

Finally, as the trial judge noted, his other instructions on the elements of the crimes for possession clearly required the jury to find that Graham's possession was intentional. A trial court has discretion in giving instructions to the jury and, on appeal, the instructions should be approved if, after being considered in their entirety, they properly and fairly state the law as applied to the facts in the case. Further, the court had broad discretion in answering jury questions during deliberations. K.S.A. 1987 Supp. 60-248(e). See *State v. Ruebke*, 240 Kan. 493, 511, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987). Viewing the instructions and the trial court's supplemental definition of "possession" in their entirety, the trial court neither erred nor was the defendant prejudiced.

Graham's final argument is that there was insufficient evidence to convict him of the charge of possession of cocaine. Where there is a challenge to the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Dunn*, 243 Kan. 414, 429, 758 P.2d 718 (1988). Possession is having control of a thing with the knowledge of, and the intent to have, such control. Possession and intent, like the elements of any other crime, may be proved by circumstantial evidence. *State v. Faulkner*, 220 Kan. 153, Syl. ¶ 13.

Here, the fact that the drugs were found either on Graham's person or in the car that he was driving was not disputed. The only issue in this case was whether Graham knew that he had the drugs in his possession. Under the facts submitted to the jury, a rational factfinder could infer intent beyond a reasonable doubt.

Affirmed.