(52 P.3d 339)
Nos. 87,347
87,348

STATE OF KANSAS, *Appellee,* v. BRANDON K. GIBSON, *Appellant.*

Opinion filed August 23, 2002.

*Gwynne E. Harris,* of Topeka, for appellant.

*Brenda M. Jordan,* assistant county attorney, *William E. Kennedy, III,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., MARQUARDT and BEIER, JJ.

MARQUARDT, J.: Brandon K. Gibson appeals numerous convictions for the possession, sale, and cultivation of marijuana, and possession of cocaine with the intent to distribute. The cases have been consolidated for this appeal. We affirm in part and dismiss in part.

## I. Facts

### A. Case No. 00 CR 510

In May 2000, law enforcement officials received a telephone call from Rod Scharfe, who informed them that a residence was being

used solely for the purpose of cultivating marijuana. Scharfe identified Gibson and Kenneth Guye as the individuals involved.

Detectives Rod Cook and Mark French contacted Gibson's neighbors. The neighbors reported that it did not appear that anyone actually lived in the residence. Detective Cook found that the usage of electricity for the residence was nearly three times as much as that of prior occupants.

A search warrant was obtained. During the search of the residence, the officers found marijuana plants in various stages of growth. They also found processed marijuana and cocaine. The officers seized 202 marijuana plants with a total weight of 964.9 grams. The officers also found various paraphernalia, including a dehydrator and specialized lighting. Documents found at the residence bore Gibson's name.

Gibson was arrested and charged with one count of cultivation of marijuana, one count of possession of marijuana with the intent to distribute, one count of possession of cocaine with the intent to distribute, one count of felony possession of drug paraphernalia, three counts of no drug tax stamp, and two counts of misdemeanor possession of drug paraphernalia.

Gibson was tried by a jury and convicted on all counts. After the verdict was entered, the trial court issued an order arresting judgment on one conviction for not having a drug tax stamp. Gibson filed a timely notice of appeal.

### B. Case No. 00 CR 772

In July 2000, Officer Shawn Grimes received a report that a gun was displayed during an argument over a drug deal at Gibson's apartment. When Officer Grimes went to Gibson's apartment, he saw a white male leave the apartment and drive away. Officer Grimes stopped the vehicle approximately one block from Gibson's residence. The driver was identified as Kelly Surs. Surs volunteered that he had been in Gibson's apartment.

Surs testified that when he was at Gibson's residence, Gibson gave him a bag of marijuana as payment towards a loan. The authorities recovered the marijuana and some cocaine when they stopped Surs' vehicle.

Detective Richard Fink applied for a search warrant for Gibson's apartment. Detective Fink attempted to serve the warrant by knocking on Gibson's door, but there was no answer. The officers forced their way into the apartment using a sledgehammer. No one was in the apartment.

In the various rooms of Gibson's apartment, Detective Fink found an unsmoked portion of a marijuana cigarette, vegetation stems and seeds, used sandwich bags that were stained green, a sandwich bag which had a corner removed, a trash can littered with green vegetation, a package of rolling papers, a large box of freezer bags, a scale, clay nuggets, and periodicals with instruction for the cultivation of marijuana using a hydroponic system. All of the green vegetation tested positive for marijuana. Green vegetation was also found floating in the toilet bowl.

Gibson testified that on the night in question, he was not home at the time he was allegedly visited by Surs. Gibson was alerted by friends that the authorities had been in his apartment. Gibson did not return to his apartment for several days.

Gibson was charged with one count of selling marijuana within 1000 feet of a school, one count of possession of marijuana with the intent to distribute, two counts of felony possession of drug paraphernalia, and one count of misdemeanor possession of drug paraphernalia. Gibson's case was tried to a jury in May 2001. He was acquitted of the charge of selling or distributing marijuana within 1000 feet of a school, but convicted of the remaining charges. Gibson filed a timely notice of appeal.

Gibson's cases were consolidated at the sentencing hearing. Gibson presented evidence in support of his motion for a durational and dispositional departure. Gibson's expert witness testified that Gibson suffered from a paranoid personality disorder. The expert believed that Gibson would not be able to receive adequate therapy in a prison setting. The State provided testimony which showed that Gibson would be able to receive mental health counseling while he was incarcerated. The State also presented evidence of Gibson's prior failure to comply with the conditions of his probation.

The trial court found that Gibson had been a drug dealer for 15 years and was unlikely to change his behavior. Gibson was sentenced to a controlling term of 89 months' incarceration. Gibson filed a motion to consolidate his cases for appeal with this court, which was granted.

## II. Evidence Admitted Pursuant to K.S.A. 60-455

Prior to trial in Case No. 00 CR 510, Gibson made an oral motion in limine to prevent the State from presenting evidence concerning Gibson's prior contacts with the police. The State had earlier filed a motion which asked the trial court to allow testimony regarding Gibson's other drug-related crimes. The State argued that such evidence was admissible under K.S.A. 60-455 to prove intent, preparation, plan, and absence of mistake or accident. The trial court denied Gibson's motion and allowed the State to present its 60-455 evidence.

At trial, Scharfe testified that he visited Gibson's home to purchase drugs. Angeline Velez, Gibson's former girlfriend, testified that she caught Gibson cultivating marijuana in his apartment. Velez testified that she "turned him in" and that the grow operation at Gibson's apartment was similar to the set-up at the house which was raided by the police. Velez testified that she warned Gibson she was going to tell the authorities, which gave him enough time to move his grow operation.

In Case No. 00 CR 772, prior to trial, the State filed a motion seeking the admission of Gibson's prior drug activities pursuant to K.S.A. 60-455. The trial court granted the motion.

Detective Mark French testified that he responded to the call at Gibson's residence because he had previously investigated Gibson for controlled substance violations. Detective French reported the details of the investigation concerning Gibson's cultivation of marijuana. Detective French also testified about a search of Gibson's apartment in March 1998, when the police discovered one marijuana plant. Detective French testified that at the time of the search, it looked like all of the cultivation equipment had been moved to another location. Detective French opined that the operation was moved to the location that was raided in May 2000.

Detective French testified about Gibson's convictions in Case No. 00 CR 510.

On appeal, Gibson makes lengthy arguments in each criminal case, arguing that the evidence lacked relevancy, was unduly prejudicial, and was introduced for the sole purpose of prejudicing the jury against him.

Three requirements must be satisfied for the admission of evidence under K.S.A. 60-455. First, the evidence must be relevant to prove one of the facts specified in the statute. Second, the fact must be a disputed, material fact. Third, the probative value of the evidence must outweigh its potential prejudice. If these requirements are met, the scope of appellate review is limited to whether the trial court abused its discretion. *State v. Lane*, 262 Kan. 373, 388, 940 P.2d 422 (1997).

K.S.A. 60-455 reads:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Relevant evidence is evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(b). To establish relevancy, there must be some material or logical connection between the asserted facts and the inference or result they are designed to establish. *State v. Lumley*, 266 Kan. 939, 950-51, 976 P.2d 486 (1999).

Clearly, the evidence presented to the jury in both cases was relevant. Scharfe testified that he previously helped Gibson with his marijuana cultivation activities. Scharfe testified about the grow operation that was in Gibson's apartment before it was moved to the other location. Velez also testified that she saw a grow operation at Gibson's apartment. Velez believed that her threat to inform the authorities about Gibson's activity prompted the move to the location which was later raided by the police.

We have no trouble concluding that the evidence submitted pursuant to K.S.A. 60-455 was generally relevant. However, under *Lane,* we must determine whether the evidence was relevant to prove one of the facts specified in the statute.

The State sought to admit the evidence to prove intent, preparation, knowledge, plan, and absence of mistake or accident. The trial court admitted the evidence on the basis of those factors, as well as on the basis of factors independent of K.S.A. 60-455.

### A. Intent

The crucial distinction in admitting evidence of other crimes under K.S.A. 60-455 on the issue of intent is not whether the crime is a specific or general intent crime, but whether the defendant has claimed that his or her acts were innocent. The relevancy of a prior conviction to the offense charged is linked to the similarity of the two offenses. *State v. Synoracki,* 253 Kan. 59, 71-72, 853 P.2d 24 (1993).

In *State v. Graham,* 244 Kan. 194, 768 P.2d 259 (1989), the Kansas Supreme Court noted that possession of an illegal substance may be susceptible to two interpretations, one innocent and the other criminal. Accordingly, the intent with which the act was committed becomes a critical element in determining its character. 244 Kan. at 196. However, where illegal possession of drugs is charged, intent may be the only issue. In that instance, the similarity of the prior offense to the crime charged is a key factor when determining whether that evidence is relevant. 244 Kan. at 198; see *State v. Faulkner,* 220 Kan. 153, 158, 551 P.2d 1247 (1976).

In Case No. 00 CR 510, Scharfe and Velez testified about Gibson's prior experience with the cultivation of marijuana. Their testimony removes any doubt that Gibson's possession of the plants was innocent. Velez' testimony was particularly relevant, as it showed that Gibson likely transferred the cultivation operation from his apartment to the home that was raided by the police.

In Case No. 00 CR 772, Gibson was charged with possession of marijuana with the intent to distribute. However, there was not a large amount of marijuana found at Gibson's apartment. Accordingly, Detective French's testimony about Gibson's prior convic-

tions helped to prove that Gibson had the requisite criminal intent. This testimony was especially probative as related to otherwise innocuous items such as plastic baggies, which may be innocently owned.

In both cases, the trial court properly admitted evidence of Gibson's prior crimes to prove intent.

### B. Preparation

Preparation for an offense consists of devising or arranging means or measures necessary for the commission of the offense. Accordingly, a series of acts that very logically convinces the reasonable mind that the actor intended that prior activities culminate in the happening of the crime in issue may have strong probative value in showing preparation. *State v. Grissom*, 251 Kan. 851, 924, 840 P.2d 1142 (1992).

Scharfe testified that Gibson asked him for tips on the cultivation of marijuana. Scharfe also testified about a grow operation at Gibson's apartment. Velez testified that she found out Rod Scharfe was teaching Gibson how to cultivate marijuana in his basement apartment. In Case No. 00 CR 772, Detective French testified about Gibson's arrest in May 2000 and a search of Gibson's apartment in 1998. Detective French testified that the May 2000 raid of the grow house yielded a significant amount of processed marijuana. Specifically, Detective French testified that processed marijuana was found in the freezer.

Scharfe and Velez testified about the steps Gibson took to prepare for the cultivation operation. Detective French's testimony proved that Gibson's cultivation allowed him to prepare and distribute large amounts of marijuana. The evidence was relevant to show preparation.

### C. Plan

Plan refers to an antecedent mental condition that points to the doing of the offense or offenses planned. The purpose in showing a common scheme or plan is to establish, circumstantially, the commission of the act charged and the intent with which it was committed. Strictly speaking, the exception is limited to evidence which

shows some causal connection between the two offenses, so that proof of the prior offense could be said to evidence a preexisting design, plan, or scheme directed toward the doing of the offense charged. *State v. Marquez*, 222 Kan. 441, 446-47, 565 P.2d 245 (1977). In addition, evidence of prior crimes, though unrelated to the crimes charged, may be admitted to show the modus operandi or general method used by a defendant to perpetrate similar but totally unrelated crimes. See *State v. Damewood*, 245 Kan. 676, 681-82, 783 P.2d 1249 (1989).

Scharfe testified that Gibson had a grow operation at his apartment. Velez testified that she saw "shiny paper" hanging on the walls of Gibson's apartment. Velez testified that some of the plants were in dirt and some were being grown hydroponically. Velez testified that the plants were divided into various stages of growth in the apartment. The arrangement described by Velez was similar to the arrangement Gibson used at the grow house which was raided in May 2000.

In Case No. 00 CR 772, Detective French testified that the May 2000 raid, police found processed marijuana in the refrigerator and freezer. Detective Fink testified that Gibson's freezer was littered with green vegetation.

We believe that the testimony was especially relevant to prove Gibson's plan to cultivate marijuana. Gibson operated in a very specific manner, and the testimony admitted pursuant to K.S.A. 60-455 showed how Gibson displayed a certain modus operandi.

### D. Probative Value Versus Prejudicial Effect

In Case No. 00 CR 510, the jury was informed that Scharfe had been a drug dealer for 10 years. Gibson was also able to inform the jury that the State agreed to grant Scharfe immunity from prosecution in exchange for his testimony against Gibson. Velez testified that there was a time she refused to allow the police to search her residence. Gibson also informed the jury that paperwork with Velez' name on it was found at the grow house which was raided by the police. Velez also testified that she discovered Gibson had a child with another woman.

These facts diminish any potential prejudice caused by the testimony. Clearly, the jury knew that Scharfe was not a model citizen and Velez had a reason to fabricate her testimony. The credibility of these witnesses was challenged by Gibson, but the jury chose to believe their testimony regardless of their character flaws. Moreover, the testimony was not so inflammatory that it would absolutely prejudice the jury against Gibson. It would likely not surprise the average juror that Gibson, who was charged with cultivating a substantial amount of marijuana, had a past history of drug use. Accordingly, we do not believe that the testimony given pursuant to K.S.A. 60-455 in Case No. 00 CR 510 so prejudiced the jury that it was unable to render a fair decision. The probative value of the testimony clearly outweighed any potential prejudice.

In Case No. 00 CR 772, Detective French testified about Gibson's prior arrest and conviction, as well as a search warrant served in 1998. However, Detective French admitted that the 1998 search warrant yielded only one marijuana plant. In addition, Detective French's testimony about the May 2000 raid amounted to only 11 pages of the trial transcript. Detective French's entire testimony spanned 42 pages. We do not believe the focus of Detective French's testimony was on Gibson's prior conviction.

We have examined all of the factors mentioned in *Lane* and conclude that all of them were satisfied here. The only inquiry which remains is whether the trial court abused its discretion by admitting the testimony. We believe that it did not. As shown above, the testimony was relevant to the issue of intent, plan, and preparation. We find the similarities between the occurrences to be compelling. Moreover, the testimony was not overly prejudicial. Accordingly, we have no trouble concluding that the trial court did not abuse its discretion by admitting evidence pursuant to K.S.A. 60-455 in both criminal cases.

### E. Admissibility Independent of K.S.A. 60-455

On appeal, the State maintains that the evidence introduced in Case No. 00 CR 510 was admissible independent of K.S.A. 60-455 as part of the res gestae. The State believes that Scharfe's testimony established a relationship between him and Gibson. Similarly, the

State believes that Velez' testimony showed Gibson's past involvement with controlled substances. The State made a similar argument at Gibson's trial.

Res gestae deals with the admissibility of evidence of acts done, as well as declarations made before, during, or after the occurrence of the principal event. Such evidence is admissible as part of a continuing course of conduct where those acts or declarations are so closely connected with the principal occurrence as to form in reality a part of the occurrence. *State v. Edwards*, 264 Kan. 177, 200, 955 P.2d 1276 (1998).

Acts done or declarations made as part of a continuing course of conduct are not admitted into evidence without limitation but are governed by the procedural rules and rules of evidence set out in Article 4, chapter 60, of the Kansas Statutes Annotated. Thus, to be admissible, evidence must still conform to the requirements of K.S.A. 60-460. Wide latitude is given to the trial court in determining whether evidence constitutes part of the res gestae. *Edwards*, 264 Kan. at 200.

Scharfe and Velez testified that Gibson was growing marijuana at his apartment in 1998. This testimony corroborated the opinion of Detective French, who believed that Gibson had moved the grow operation from his apartment to the raided location in March 1998. All of this testimony seems to be closely connected to the offenses charged in Case No. 00 CR 510. Scharfe and Velez provided information about a continuing course of conduct that stretched from 1998 until the raid in May 2000. Accordingly, we believe that this information was properly admitted as part of a continuing course of conduct. Thus, the evidence was admissible independent of K.S.A. 60-455.

### III. Limiting Instruction

In Case No. 00 CR 510, Gibson did not request a limiting instruction. In Case No. 00 CR 772, the trial court gave a limiting instruction. On appeal, Gibson argues that the trial court must give a limiting instruction when evidence is admitted pursuant to K.S.A. 60-455. In addition, Gibson maintains that the instruction which was given was improper. He claims that the trial court should not

have given a "shotgun" instruction because it could confuse the jury.

No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds of his or her objection, unless the instruction or the failure to give the instruction is clearly erroneous. K.S.A. 2001 Supp. 22-3414(3). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Evans*, 270 Kan. 585, 588, 17 P.3d 340 (2001).

Generally, in every case where evidence of other crimes is admissible solely under the authority of K.S.A. 60-455, the trial court should give an instruction limiting the purpose for which the evidence of the similar offenses is to be considered. Under such circumstances, the failure of the trial court to give a limiting instruction, regardless of request, is of such a prejudicial nature as to require the granting of a new trial. *State v. Green*, 232 Kan. 116, 120, 652 P.2d 697 (1982). However, when evidence is admissible independent of K.S.A. 60-455, the failure to give a limiting instruction is not error. *State v. Wilson*, 247 Kan. 87, 97, 795 P.2d 336 (1990).

In Case No. 00 CR 510, the trial court admitted the prior crimes evidence pursuant to the factors set forth in the State's trial brief. One factor listed by the State was that the evidence was admissible to show a continuing relationship and other relevant information. We have previously held that the evidence was admissible independent of K.S.A. 60-455, which means that it was not error for the trial court to fail to give a limiting instruction to the jury. Gibson's argument to the contrary is not persuasive.

The trial court instructed the jury in Case No. 00 CR 772:

"Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident as it relates to Counts II, III, and IV of the Information."

At trial, Gibson objected to the proposed limiting instruction on grounds that it should only apply to Counts III and IV. The State replied that it always intended the evidence would apply to Counts II, III and IV. Gibson never objected that the language of the instruction was too broad. If a party does not specifically object to the giving of an instruction, we examine the record on appeal only to see whether the giving of the instruction was clearly erroneous. See *Evans*, 270 Kan. at 588.

The Kansas Supreme Court has repeatedly disapproved of the "shotgun" approach to instructing under K.S.A. 60-455. In disapproving of shotgun instructions, the court has said that rarely will all of the eight elements enumerated in the statute be relevant to issues at trial. Thus, the use of a stock 60-455 instruction only increases the risk of error. *State v. Donnelson*, 219 Kan. 772, 777, 549 P.2d 964 (1976).

In *State v. Moore*, 218 Kan. 450, 543 P.2d 923 (1975), the trial court gave a shotgun limiting instruction after the introduction of evidence pursuant to K.S.A. 60-455. However, the defendant failed to object to the shotgun nature of the instruction. Instead, the defendant objected on grounds that the instruction was improper. The Kansas Supreme Court, after reviewing the contemporaneous objection rule, concluded that the shotgun limiting instruction was not clearly erroneous. The court refused to reverse the defendant's conviction. 218 Kan. at 455-56.

It is firmly settled in this state that a party making an objection must do so in a timely manner, stating with specificity the grounds for the objection. See *State v. Jamison*, 269 Kan. 564, 569-70, 7 P.3d 1204 (2000). Gibson failed to object to the shotgun nature of the limiting instruction given at his trial. Accordingly, we will follow the Kansas Supreme Court's action in *Moore* and find that the limiting instruction was not clearly erroneous. We disapprove of the instruction given by the trial court and caution that limiting instructions given after the admission of evidence pursuant to K.S.A. 60-455 must be narrowly tailored to mention only the grounds under which the evidence was admitted. However, given the lack of a specific objection and the nature of the evidence, we do not believe that this was an error which requires reversal.

## IV. Failure to Allow Certain Testimony

In Case No. 00 CR 772, Gibson sought endorsement of a witness on the morning of trial. Gibson told the trial court that Art Leon was not an alibi witness, just someone "saying that approximately half an hour before the cops say they were there that my client was seen on the road." The State objected on grounds that Leon was indeed an alibi witness. Gibson's request was denied.

On appeal, Gibson argues that the trial court erred by excluding Leon's testimony. Gibson believes that he should have had the ability to disclose Leon's identity on the morning of trial. Gibson specifically contends that the trial court failed to follow the factors enumerated in *State v. Bright*, 229 Kan. 185, 194, 623 P.2d 917 (1981). Gibson believes that such an inquiry is necessary to handle the late endorsement of witnesses for both the prosecution and the defense.

The exclusion of alibi testimony because of noncompliance with the notice requirements of K.S.A. 22-3218 is within the trial court's discretion. *State v. Claiborne*, 262 Kan. 416, 423, 940 P.2d 27 (1997).

K.S.A. 22-3218(1) reads:

"In the trial of any criminal action where the complaint, indictment or information charges specifically the time and place of the crime alleged to have been committed, and the nature of the crime is such as necessitated the personal presence of the one who committed the crime, and the defendant proposes to offer evidence to the effect that he was at some other place at the time of the crime charged, he shall give notice in writing of that fact to the prosecuting attorney except that no such notice shall be required to allow testimony as to alibi, by the defendant himself, in his own defense. The notice shall state where defendant contends he was at the time of the crime, and shall have endorsed thereupon the names of witnesses he proposes to use in support of such contention."

The notice required in K.S.A. 22-3218(1) must be served on the prosecuting attorney at least 7 days before the commencement of the trial. See K.S.A. 22-3218(2). The notice requirement does not deprive the accused of the alibi defense but simply makes notice a prerequisite. Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an 11th-hour defense is both obvious and legitimate. *Claiborne*, 262 Kan. at 423.

In *Bright,* the Kansas Supreme Court held that there is no reciprocal statutory requirement that the defendant must disclose the names of defense witnesses prior to trial, with the exception of alibi witnesses. 229 Kan. at 192. The court listed seven factors which the trial court should consider when deciding whether to allow the late endorsement of a witness. 229 Kan. at 194. The factors enumerated in *Bright* apply when the defendant seeks to endorse an additional alibi witness. See *State v. Douglas,* 234 Kan. 605, 607-08, 675 P.2d 358 (1984). However, in *Douglas,* the defendant properly noticed the names of three alibi witnesses. The defendant sought the endorsement of an additional alibi witness after the State rested its case.

In order for the trial court to allow the late endorsement of an alibi witness, a defendant must demonstrate good cause for the delay. A defendant does not demonstrate good cause when his or her excuse is that he or she knew the witnesses' addresses but not their names. See *State v. Pham,* 27 Kan. App. 2d 996, 1007, 10 P.3d 780 (2000).

The factors enumerated in *Bright* do not apply to this case because Gibson failed to follow the statutory notice requirement. Thus, our only question is whether the trial court abused its discretion by refusing to admit Leon's testimony. The only thing Gibson told the trial court was that Leon's testimony was not discovered until the morning of trial. We do not believe that this was a good cause. Gibson did not state that Leon's testimony was not capable of being discovered until the morning of trial. It appears that Leon's testimony was capable of discovery if Gibson would have desired to pursue an alibi defense. Accordingly, we find that the trial court did not abuse its discretion when it did not allow Leon to testify.

## V. Sufficiency of Evidence

Gibson points out that Detective Fink only recovered marijuana residue from his apartment in Case No. 00 CR 772. Gibson argues that the marijuana residue seized from his apartment was not enough to support a charge of possession with the intent to distribute.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Jasper*, 269 Kan. 649, 655, 8 P.3d 708 (2000).

In Count II, the State alleged that Gibson unlawfully possessed marijuana with the intent to sell, deliver, or distribute. This offense is defined at K.S.A. 2001 Supp. 65-4163(a), which reads:

"(a) Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with the intent to sell, deliver or distribute; cultivate; prescribe; administer; deliver; distribute; dispense or compound:

. . .

(3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105, and amendments thereto or designated in subsection (g) of K.S.A. 65-4107 and amendments thereto or designated in subsection (g) of K.S.A. 65-4109 and amendments thereto."

In order to sustain a conviction for possession of narcotics or dangerous drugs for purpose of sale, there must be sufficient proof of possession of such drugs and proof that the possession was for the purpose of sale. Such proof may be circumstantial and may consist of evidence as to quantity of the narcotic, equipment found with it, place it was found, manner of packaging, and opinion of experts that the narcotic was packaged for sale. *State v. Smith*, 4 Kan. App. 2d 149, 151, 603 P.2d 638 (1979).

In determining whether a defendant is guilty of possession with the intent to distribute, the trier of fact is entitled to weigh all the circumstances in a given case. The quantity of drugs possessed is only one factor to be considered. Thus, a conviction for possession with the intent to distribute may be upheld even though the quantity of drugs seized is consistent with personal use. *Stanley v. Commonwealth*, 12 Va. App. 867, 869, 407 S.E.2d 13 (1991). However, possession with the intent to distribute is a crime which requires an act coupled with a specific intent. The Virginia Court of Appeals found that in order to be convicted of possession of a controlled substance with the intent to distribute, the Commonwealth must

prove that the defendant possessed the controlled substance contemporaneously with his or her intention to distribute that substance. 12 Va. App. at 869.

There is no question that Gibson possessed marijuana. Gibson testified that the apartment searched by the authorities was his. Detective Fink testified that he found a partial marijuana cigarette and green vegetation in numerous places in the apartment. Thus, our only question is whether Gibson possessed the marijuana with the requisite intent to distribute.

Detective Fink testified that according to his training, he looked for certain paraphernalia which would indicate an intent to distribute. Detective Fink elaborated that such paraphernalia may include packaging, scales, ledgers, or other mechanisms of distribution. Detective Fink testified that in this area, bulk marijuana is normally broken down into smaller amounts for distribution.

Detective Fink testified that he recovered a trash can containing several used plastic bags with green stains. One of the bags had a corner removed, which, he testified, was a common practice for packaging controlled substances. Detective Fink testified that in his experience, distributors of marijuana will initially receive their marijuana in bricks or large bags. When Detective Fink found the empty plastic bags in Gibson's trash can, he believed that it was an indication that larger quantities of marijuana were once present in Gibson's home, but had since been removed from the bags for repackaging.

During the execution of the search warrant, Detective Fink discovered a large box of freezer bags, a box of sandwich bags, and an empty box of freezer bags. Detective Fink testified that this, together with the other evidence, was a "strong indication of distribution." Detective Fink also recovered a scale from Gibson's kitchen. Detective Fink found green vegetation floating in Gibson's toilet bowl and suspected that Gibson had attempted to get rid of evidence by flushing it down the toilet.

This case is unique because the amount of marijuana found at Gibson's apartment was small. However, when we view the evidence in its entirety and in a light most favorable to the State, we must conclude that there was sufficient evidence to support Gib-

son's conviction. Detective Fink provided extensive testimony concerning the evidence of marijuana distribution found at Gibson's apartment. The paraphernalia, especially the plastic bag with its corner removed, provided strong circumstantial evidence in support of the State's case. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Murillo*, 269 Kan. 281, 286, 7 P.3d 264 (2000).

Detective Fink provided sufficient testimony to sustain a conviction if the jury chose to rely on his experience and knowledge about the distribution of marijuana. The jury so chose, as was its prerogative. We find that there was sufficient evidence to support Gibson's conviction.

## VI. Application of the Risk Assessment Tool at Sentencing

Gibson contends that the trial court erred by not considering placement at a community correctional services program. Gibson believes that the trial court should have applied the standardized risk assessment tool mentioned in K.S.A. 2001 Supp. 75-5291(a)(2)(E).

Interpretation of a statute is a question of law, and this court is afforded an unlimited standard of review. See *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

In Case No. 00 CR 510, Gibson's convictions placed him in a border box. In Case No. 00 CR 772, Gibson fell in a presumptive prison box. Gibson was assigned his presumptive sentence; thus, we do not have jurisdiction to consider his complaint regarding Case No. 00 CR 772. See K.S.A. 21-4721(c)(1). Accordingly, his appeal on this issue in Case No. 00 CR 772 is dismissed. Our inquiry is limited to the facts of Case No. 00 CR 510.

It appears that Gibson failed to carefully read the sentencing documents contained with the record on appeal. On the presentence investigation report, the court services officer recommended community corrections rather than court services placement. Under the community corrections recommendation, there is an "x" marked in the box "(a)(2)(E) Scored 'high risk or needs, or both.' " We believe that the State completed the mandatory standardized

risk assessment on Gibson and made appropriate recommendations.

The record on appeal does not disclose any error in the procedure surrounding Gibson's sentencing hearing.

Affirmed in part and dismissed in part.