NOT DESIGNATED FOR PUBLICATION

No. 116,859

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE ORIN RICK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed May 25, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Brock Abbey*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER JJ.

PER CURIAM: Jesse Rick appeals his jury trial convictions alleging the district court failed to properly instruct the jury, the evidence was insufficient to convict him, and the district court erred in assessing Board of Indigents' Defense Services (BIDS) attorney fees to him. Our review reflects the district court properly instructed the jury as no separate jury instruction setting out intent was required when the instruction for the crime defined the intent element. The record reflects the evidence, although circumstantial on some of the charges, was sufficient to support his jury trial conviction.

1

Rick's final argument challenges the district court's order to reimburse BIDS for his attorney fees. We agree the district court failed to follow *State v. Robinson*, 281 Kan. 538, 546, 132 P.3d 934 (2006), and we must remand for the reconsideration of Rick's ability to reimburse BIDS for attorney fees under *Robinson*. Affirmed in part, reversed in part, and remanded with directions.

FACTS

Rick was driving northbound on 8th Street in Salina before turning eastbound onto Harsh Street at a high rate of speed. At the same time, Officers Jeremy Watkins and Andrew Meek—who were wearing their police uniforms and were engaged in their official duties—were crossing Harsh Street, approximately 75 feet away. Officers Watkins and Meek motioned and yelled for Rick's vehicle to stop or slow down. The car kept accelerating.

Rick's vehicle came within a few feet of hitting Officers Watkins and Meek; they had to jump out of the middle of the road to avoid getting hit. Officer Watkins immediately radioed the tag number and vehicle description to dispatch. Sergeant Brent Rupert, who was in the area, pursued the vehicle.

After a short chase, Rick's vehicle came to a stop behind a house and he fled on foot through a field. Officers apprehended Rick. Rick admitted he threw a set of silver digital scales into the field. The scales later tested positive for methamphetamine. Police searched the vehicle Rick was driving, uncovering a second set of digital scales, a glass pipe with burnt white residue on it, a partially burnt brown cigarette, and a backpack containing several empty small plastic baggies and other items.

The State charged Rick with aggravated assault of a law enforcement officer; kidnapping; unlawful possession of a controlled substance (methamphetamine); unlawful

2

possession of a controlled substance (marijuana); interference with law enforcement; possession of drug paraphernalia; possession of drug paraphernalia with intent to use to distribute; and driving while suspended. After the State rested at trial, the district court granted a motion for acquittal on the kidnapping and driving while suspended charges.

Prior to closing arguments, the district court conducted a jury instruction conference. Rick requested the district court instruct the jury on the definition of the intentional culpable mental state in its instructions for unlawful possession of controlled substances and unlawful possession of drug paraphernalia. The district court denied the requested instructions. Rick also requested, and the district court agreed to give, an instruction for assault on a law enforcement officer as a lesser included offense of aggravated assault of a law enforcement officer. On the State's motion, the district court also amended the complaint to include a charge of fleeing or attempting to elude a police officer.

The jury convicted Rick of assault of a law enforcement officer, possession of methamphetamine, possession of marijuana, interference with law enforcement by obstructing official duty, possession of drug paraphernalia with the intent to use to distribute, and fleeing or attempting to elude a police officer.

At Rick's sentencing hearing, the district court assessed Rick with BIDS attorney fees of $2,600 plus the $100 application fee, finding "those are not an undue burden or hardship."

ANALYSIS

*No separate intent instruction was required.*

Rick timely requested the district court instruct the jury separately on the definition of "intent" as it applied to the elements of possession of drug paraphernalia with intent to use to distribute. He argues the district court erred when it declined to give the requested instruction.

> "When analyzing jury instruction issues, an appellate court follows a three-step process by: (1) Determining whether the appellate court can or should review the issue, *i.e.,* whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred below; and (3) assessing whether the error requires reversal. Whether a party has preserved a jury instruction issue affects the reversibility inquiry at the third step. . . .
>
> "At the second step, we consider whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the district court erred, and the error did not violate a constitutional right, 'the error is reversible only if [the court] determine[s] that there is a "reasonable probability that the error will or did affect the outcome of the trial in light of the entire record."' [Citations omitted.]" *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016).

Generally, a culpable mental state is an essential element of every crime. A culpable mental state may be established by proving the defendant acted intentionally, knowingly, or recklessly. K.S.A. 2017 Supp. 21-5202(a). Even if a statute does not prescribe a culpable mental state, a culpable mental state is generally still required. K.S.A. 2017 Supp. 21-5202(d). However, K.S.A. 2017 Supp. 21-5202(g) also states:

> "If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be

required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided."

K.S.A. 2017 Supp. 21-5709(b)(1) states: "It shall be unlawful for any person to use or possess with intent to use any drug paraphernalia to . . . distribute a controlled substance." K.S.A. 2017 Supp. 21-5701(q) defines possession as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." Scales are included in the definition of drug paraphernalia. K.S.A. 2017 Supp. 21-5701(f)(5).

In *State v. Hanks*, No. 114,640, 2016 WL 4585620 (Kan. App. 2016) (unpublished opinion), a panel of this court addressed a similar issue. Hanks was convicted of possession with intent to use drug paraphernalia to store, contain, conceal, inject, ingest, inhale, or otherwise introduce a controlled substance into the human body. Hanks complained the jury was not instructed on the definitions of intentional, knowing, or reckless as they related to a culpable mental state. The panel found the plain language of K.S.A. 2015 Supp. 21-5709(b)(2) required the defendant have intended to use the drug paraphernalia. It found the intent to use was the only culpable mental state required to sustain a conviction. The panel held "[t]he inclusion of 'with intent to use' in the jury instruction foreclose[d] any requirement of an additional culpable mental state as an element of this crime." 2016 WL 4585620, at *4. Pursuant to K.S.A. 2015 Supp. 21-5202(g), the panel concluded no additional or separate mental state instruction needed to be submitted to the jury. 2016 WL 4585620, at *4.

Based on the rationale in *Hanks*, Rick's requested jury instruction—which included the definition of intentional as the required culpable mental state—was not legally appropriate. The "intent to use" in the instruction given was the only culpable

5

mental state required. The district court did not err when it declined to give Rick's requested instruction.

Even if Rick's requested instruction was legally appropriate, he is not entitled to relief. Again, *Hanks* is instructive. In that case, Hanks was also charged with possession of methamphetamine. The district court's instructions defined possession of methamphetamine as: "'having joint or exclusive control over [it] with knowledge of and the intent to have such control or knowingly keeping [it] in a place where [she] has some measure of access and right of control.'" 2016 WL 4585620, at *3. On appeal, Hanks complained the instructions did not give the required definitions of intentional, knowing, or reckless. The panel found the failure to define "intent" and "knowingly" did not render the jury instructions defective because "[t]he legislature's definitions of the terms 'knowingly,' 'reckless,' and 'with intent' . . . do not differ from the dictionary definitions of those words or from how those words are used by nonlawyers in their everyday conversations. They did not need to be defined in the instructions. [Citations omitted.]" 2016 WL 4585620, at *4.

While the *Hanks* panel reviewed for clear error—Hanks did not object to the instruction—the result is the same. Here, there is no reasonable probability the failure to include the definition of intentional affected the outcome of the trial. The instruction used normal, everyday words in their normal, everyday way and there is no indication the jury was confused by the instruction. If there was error, it was harmless.

*Rick's conviction for possession of drug paraphernalia with the intent to use to distribute was supported by sufficient evidence.*

Rick also challenges the sufficiency of the evidence supporting his conviction for possession of drug paraphernalia with the intent to use to distribute. "'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence

in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983); see *State v. Naramore*, 25 Kan. App. 2d 302, 322, 965 P.2d 211 (1998) (uncontroverted expert testimony that defendant physician's treatment was within reasonable health care protocols insufficient to uphold murder and attempted murder convictions).

A conviction of even the gravest offense can be based entirely on circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

K.S.A. 2017 Supp. 21-5709(b)(1) states: "It shall be unlawful for any person to use or possess with intent to use any drug paraphernalia to . . . distribute a controlled substance." K.S.A. 2017 Supp. 21-5701(q) defines possession as "having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." In order to convict Rick, the evidence presented by the State had to show he possessed drug paraphernalia *and* had the intent to use it to distribute a controlled substance.

7

K.S.A. 2017 Supp. 21-5701(d) states:

> "'Distribute' means the actual, constructive or attempted transfer from one person to another of some item whether or not there is an agency relationship. 'Distribute' includes, but is not limited to, sale, offer for sale or any act that causes some item to be transferred from one person to another. 'Distribute' does not include acts of administering, dispensing or prescribing a controlled substance as authorized by the pharmacy act of the state of Kansas, the uniform controlled substances act or otherwise authorized by law."

Rick argues there was no actual evidence presented of a sale. He also argues there was very little circumstantial evidence presented to support his conviction for possession of drug paraphernalia with the intent to use it to distribute a controlled substance. He contends the evidence was "significantly less" than the evidence in *State v. Gibson*, 30 Kan. App. 2d 937, 52 P.3d 339 (2002). However, *Gibson* is easily distinguishable. In *Gibson*, the question was whether there was sufficient evidence to convict him of possession of marijuana with the intent to distribute, not possession of drug paraphernalia with the intent to use to distribute a controlled substance. Gibson unquestionably possessed marijuana; however, the officers only found a partial marijuana cigarette and green vegetation in the apartment. In *Gibson*, the officers also found paraphernalia which, when combined with the small amount of marijuana, "provided strong circumstantial evidence" Gibson possessed marijuana with the intent to distribute. 30 Kan. App. 2d at 955.

Here, Rick admitted he possessed a scale with methamphetamine residue on it. This satisfies the definition of drug paraphernalia. K.S.A. 2017 Supp. 21-5701(f)(5). Thus, the question is whether there was sufficient evidence, either direct or circumstantial, suggesting Rick intended to use the scale to distribute a controlled substance. There was. Officer Meek testified he found a second set of digital scales, a glass pipe with burnt white residue on it, and a partially burnt brown cigarette. Officer Meek did not find "owe sheets" or large amounts of cash but found a backpack

8

containing "several empty small plastic baggies." He later described the baggies as 2-inch by 3-inch jewelry baggies. Officer Meek testified: "[The baggies] were empty at the time and without finding significant amount of illegal narcotics at the time of discovery, the empty baggies themselves, though suspicious, they weren't really significant to me for any type of distribution charge, I would think." However, Officer Meek also testified that, in his training and experience, baggies of this size are used for packaging drugs for sale or distribution. The jury could have concluded, based on the baggies and Rick's admission the scale was his, he possessed it all with the intent to use it to distribute methamphetamine. Viewed in the light most favorable to the State, a rational fact-finder could have found Rick guilty beyond a reasonable doubt of possession of drug paraphernalia with intent to use to distribute a controlled substance. A conviction of even the greatest offense may be sustained by circumstantial evidence. *Logsdon*, 304 Kan. at 25.

*Rick's conviction for felony interference with a law enforcement officer is supported by sufficient evidence.*

Rick contends there was insufficient evidence supporting a conviction for felony interference with a law enforcement officer. Specifically, he contends there was no evidence Sergeant Rupert believed he was investigating a felony. Rick contends Sergeant Rupert was merely investigating a car traveling at a high rate of speed, thus, he could only have been convicted of misdemeanor interference with a law enforcement officer based on his allegation he was only investigating a traffic offense. Rick's argument is unpersuasive.

We discussed the standard of review when the sufficiency of the evidence is challenged in our discussion of the previous issue.

Rick relies on *State v. Hudson*, 261 Kan. 535, 931 P.2d 679 (1997), to support his argument. In *Hudson*, a law enforcement officer saw a vehicle run a stop sign and activated his lights and sirens. The driver of the vehicle attempted to drive away from law enforcement who gave chase, reaching speeds of up to 70 miles per hour. The driver eventually got out of the car and fled on foot. A short time later, Hudson was taken into custody. Only after Hudson was arrested did law enforcement learn he had warrants. The Kansas Supreme Court held: "The touchstone for the classification of the offense is the reason for the officer's approaching the defendant who then flees or otherwise resists, and not the status of the defendant." 261 Kan. at 538-39. *Hudson* is easily distinguishable. Hudson was chased for running a stop sign, a misdemeanor act—not his active warrants—the interference was properly classified as a misdemeanor. 261 Kan. at 538-39.

Here, there is no dispute aggravated assault on a law enforcement officer is a felony. K.S.A. 2017 Supp. 21-5412(e)(4). Despite Rick's contention Sergeant Rupert was merely investigating a car traveling at a high rate of speed, the evidence actually shows he was investigating aggravated assault on a law enforcement officer as he pursued Rick to stop him. Sergeant Rupert testified he was in the area looking for a gray house when he heard Officer Watkins "screaming on the radio, or yelling on the radio." Officer Watkins was yelling a vehicle almost hit him and Officer Meek, and the vehicle was eastbound on Harsh Street. Officer Watkins provided a description of the vehicle, including the tag number. Sergeant Rupert testified he saw the vehicle traveling eastbound on Harsh Street at a high rate of speed, activated his lights and sirens, and began pursuing the vehicle. Sergeant Rupert pursued the vehicle until it came to a stop. Rick had already fled on foot.

Unlike the officer in *Hudson*—who attempted to stop a vehicle for a traffic offense—Sergeant Rupert only pursued Rick after hearing Officer Watkins on the radio saying that a vehicle almost hit him and Officer Meek. While it is true Rick was traveling at a high rate of speed, it was not the reason from the pursuit. Sergeant Rupert pursued

10

Rick because Rick nearly hit Officers Watkins and Meek with his vehicle. Although he does not specifically say it, Sergeant Rupert gave chase because he was investigating a felony crime—aggravated assault of a law enforcement officer. Viewed in the light most favorable to the State, there is sufficient evidence supporting a conviction for felony interference with a law enforcement officer since aggravated assault of a law enforcement officer is a felony.

*Rick's conviction for assault of a law enforcement officer is supported by substantial evidence.*

Rick contends there was insufficient evidence to convict him of assault of a law enforcement officer. Specifically, he asserts the State failed to prove he knowingly caused Officers Watkins and/or Meek reasonable apprehension of immediate bodily harm. The standard of review in a sufficiency of the evidence challenge has been discussed above.

In order to prove assault of a law enforcement officer, the State must show Rick knowingly placed a uniformed law enforcement officer, who was engaged in the performance of his official duties, in reasonable apprehension of immediate bodily harm. See K.S.A. 2017 Supp. 21-5412. "A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2017 Supp. 21-5202(i).

Here, there is no dispute Officers Watkins and Meek were in uniform. Similarly, there is no dispute they were performing their official duties. In addition, there is no dispute the officers were placed in reasonable apprehension of immediate bodily harm. Thus, the only question is whether Rick acted knowingly.

11

Rick contends he did not. He asserts he told Officer Watkins he was not trying to hit them but had panicked and hit the accelerator instead the brake pedal. He argues: "Taking into consideration [his] reaction time and the speed the officers believe the car was going as it came around the corner, it would have been nearly impossible for the car to stop before reaching the point where the officers stood in the middle of the roadway." Thus, he contends, the State failed to prove when he drove his car around the corner that he did so knowing it would cause the officers to reasonably apprehend immediate bodily harm.

Rick's argument is unpersuasive. The jury heard the evidence that Rick gave multiple versions of the morning's events. He first told Officer Watkins his female passenger stepped over the vehicle's console and pressed the accelerator with her foot. After Officer Watkins told Rick his story was unbelievable, Rick indicated he panicked when he came around the corner and must have hit the accelerator instead of the brake. Rick's version of events changed practically any time someone questioned him about it. Officer Watkins also testified Officer Chris Venables suggested the accelerator may have been inadvertently pressed.

However, both officers testified consistently the vehicle kept speeding up, never letting off the throttle. Officer Watkins indicated he and Officer Meek had to "jump" out of the middle of the road. The vehicle came "within a few feet" of hitting the officers.

Rick's conviction for assault of a law enforcement officer does not reflect a lot of direct evidence but it is clearly supported by the circumstantial evidence. A conviction of even the gravest offense can be based entirely on circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *Logsdon*, 304 Kan. at 25. Here, Rick's version of events changed multiple times. Neither Officer Watkins nor Officer Meek saw the vehicle attempt to

brake; it just kept accelerating. In the light most favorable to the State, a reasonable jury could find Rick was reasonably certain his conduct would place the officers in reasonable apprehension of immediate bodily harm. There was sufficient evidence supporting the conviction; Rick is not entitled to relief.

*The district court failed to follow* Robinson.

Finally, Rick asserts the district court erred when it assessed BIDS attorney fees against him in the amount of $2,700. He claims the district court failed to consider his financial resources and the nature of the burden imposition of attorney fees would impose.

Sentencing courts, at the time of the initial assessment of BIDS attorney fees under K.S.A. 22-4513, must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision. *Robinson*, 281 Kan. at 546.

Resolution of this issue requires interpretation and application of K.S.A. 22-4513, which is a question law subject to unlimited review. 281 Kan. at 539. The remedy for a sentencing court's failure to make explicit findings is to remand to the lower court for such findings. 281 Kan. at 548.

Here, the district court addressed BIDS attorney fees with the following colloquy:

> "And Mr. Rick, are you employable when you're released on postrelease supervision?
> "THE DEFENDANT: Am I employable?
> "THE COURT: Yes. Can you get a job?
> "THE DEFENDANT: I hope so.
> "THE COURT: All right. Do you have any mental or physical disabilities that prevent you from working full-time?

13

"THE DEFENDANT: Not that I know of.

"THE COURT: And you have at least two children, correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you have any other kids under the age of 18?

"THE DEFENDANT: No, sir.

"THE COURT: The Court is going to impose attorney fees in the amount of $2,600, $100 for application fee. Find those are not an undue burden or hardship."

This is a well-settled area of the law and requires the district court to specifically consider on the record, based on the defendant's individual situation, whether repayment of BIDS attorney fees will cause an undue financial hardship. Our Supreme Court in *Robinson* set out the rules to follow. 281 Kan. at 546-47.

Here, the district court did not explicitly consider the defendant's financial resources or the burden the imposition of attorney fees would impose on him. While Rick believes he will be able to work full time, there is no indication how much Rick will earn. Similarly, the court did not inquire as to Rick's other assets or financial obligations. The district court failed to explain how it weighed the factors it inquired about. It merely concluded the attorney fees were not an undue burden or hardship. The district court erred when it did not explicitly state on the record how it weighed Rick's financial resources and the nature of the burden that payment of BIDS attorney fees would impose. The district court's imposition of BIDS attorney fees is reversed and remanded for findings consistent with *Robinson*.

Affirmed in part, reversed in part, and remanded with directions.