NOT DESIGNATED FOR PUBLICATION

No. 119,781

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT NICHOLAS MCGINLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed August 16, 2019. Affirmed in part, sentence vacated in part, and case remanded with directions.

*Heather Cessna*, of Kansas Appellate Defender Office, for appellant.

*Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL and BUSER, JJ.

PER CURIAM: Robert Nicholas McGinley appeals the district court's denial of his presentence motion to withdraw pleas, and its order for him to pay attorney fees. First, McGinley contends the district court abused its discretion in ruling that he failed to demonstrate good cause to withdraw his pleas. Second, McGinley asserts the district court erred by ordering him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees without explicitly considering his financial resources and the burden that payment would impose on him.

1

Upon our review, we find no abuse of discretion by the district court in denying McGinley's motion to withdraw pleas. But we hold that the district court erred in assessing BIDS attorney fees. As a result, we affirm in part, vacate the sentence in part, and remand for reconsideration of reimbursement of BIDS attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2017, the Shawnee County Dispatcher notified police officers of a vehicle traveling slowly and swerving on the highway. Motorists following the vehicle believed the driver was either falling asleep or suffering some type of medical problem. Officers later determined that McGinley was the driver and sole occupant of the vehicle.

A police officer located McGinley's vehicle and observed him driving between 20 miles per hour and a complete stop in a 55 mile-per-hour speed zone. After the officer activated his emergency lights and siren, McGinley sped away, leading officers on a high-speed pursuit, with speeds exceeding 120 miles per hour. The pursuit finally ended in Manhattan when McGinley collided head-on with another vehicle. The driver of the other vehicle sustained injuries from the collision.

After McGinley's vehicle came to a stop, he raised his hands outside the driver's side window. After officers ordered him to exit the vehicle, McGinley's hands began to shake violently. McGinley was removed from the vehicle and emergency medical services were summoned. Officers restrained McGinley because he was acting abnormally, and officers believed his erratic behavior was characteristic of excited delirium—a drug induced mental disorder.

After McGinley was transported to the hospital, he was placed in four-point restraints to control his bizarre behavior. Doctors treated McGinley for a drug overdose and drew blood for testing by the Kansas Bureau of Investigation (KBI). The KBI blood

test results revealed that McGinley was under the influence of methamphetamine, amphetamine, phencyclidine (PCP), and marijuana.

A search of McGinley's vehicle after the accident revealed more than a kilogram of crystal methamphetamine, a pound of marijuana, drug packaging materials, scales, $30,135 in cash, two loaded firearms, and ammunition.

McGinley was charged with possession of methamphetamine with intent to distribute, possession of marijuana with intent to distribute, aggravated battery, possession of drug paraphernalia, criminal possession of a firearm, and driving under the influence.

Three days before a jury trial was scheduled to begin, McGinley appeared for a pretrial hearing and announced a plea agreement with the State. Under the agreement, McGinley agreed to plead no contest to all six charges against him. In exchange for McGinley's pleas, the State agreed to file no additional charges and recommend a sentence of not more than 230 months in prison. In the acknowledgment of rights document, McGinley crossed out the paragraph which stated that he was satisfied with his attorney's assistance. McGinley and his attorney, Lora D. Ingels, initialed the crossed-out paragraph.

Before signing the plea agreement, however, McGinley indicated that he wanted new counsel to represent him. The State informed McGinley that the plea offer would not remain available for acceptance if McGinley obtained new counsel which would necessarily result in a continuance of the trial. The State also advised that if McGinley obtained new counsel and trial was continued that the prosecution may move for an upward durational departure. Ingels informed McGinley that the State could move for an upward departure sentence and explained the evidentiary basis for the departure which the State would have to prove.

3

In compliance with the plea agreement, McGinley pled no contest as charged. Before accepting the pleas, the district court engaged in a detailed colloquy with McGinley, insuring that he understood his rights and the consequences of his pleas. During the plea colloquy, McGinley agreed that he fully discussed the case with Ingels and that she had explained any available defenses to the charges. Based on this consultation, McGinley did not believe that he had viable defenses, which was the reason he wanted to accept the plea offer.

When asked if anyone made a promise to induce him to enter pleas of no contest, McGinley said, "I'm being promised that if I fire my lawyer . . . that the State would file an upward departure." In response, the prosecutor explained that "under the circumstances we've been going back and forth for months on this, I might consider filing a motion for an upward durational departure if we were to have to reset this matter for trial if he were to get a new attorney." According to Ingels, she explained to McGinley that, while the prosecutor's statements may seem like a threat, McGinley had every right to reject the plea offer and proceed with trial. McGinley clarified that he took the prosecutor's statements about the departure motion as a promise and not as a threat. Regardless of the prosecutor's comments, McGinley informed the district court that he entered into the plea agreement freely, voluntarily, and of his own free will.

After the extended discussion, the district court determined that McGinley appreciated the consequences of pleading no contest and that his decision was freely, voluntarily, and intelligently made. The district court accepted McGinley's pleas and found him guilty as charged.

Before sentencing, McGinley filed pro se motions to withdraw his pleas and to appoint new counsel. The district court granted McGinley's request for new counsel. McGinley moved to withdraw his pleas for three reasons. First, McGinley argued that Ingels provided incompetent representation by failing to advise him of a possible

4

voluntary intoxication defense to his most serious charges. Second, McGinley claimed Ingels inadequately researched his criminal history score and misinformed him that his score would be higher than in fact it was. Third, McGinley asserted the State coerced him into entering the pleas by telling him the plea offer would be withdrawn and an upward departure may be sought if he requested new counsel.

The district court held an evidentiary hearing on McGinley's motion to withdraw pleas. At the hearing, McGinley testified about his conversations with Ingels and the prosecutor. McGinley said Ingels met with him about five times and discussed different plea offers. During those discussions, McGinley turned down a plea offer made before his preliminary hearing. According to McGinley, Ingels never discussed a voluntary intoxication defense with him and she implied that he would likely be found guilty if the case went to trial. McGinley believed that surrender was his only defense strategy at trial because he had no viable defense. McGinley testified that he was not satisfied with Ingels' representation and wanted a new attorney. But he decided not to request a new attorney after the State explained that it would no longer accept a plea agreement if he obtained a new attorney.

Finally, McGinley testified that Ingels explained the sentencing grid under the Kansas Sentencing Guidelines Act and reviewed his criminal history with him. During plea negotiations, McGinley believed he would have a B criminal history score. In this regard, McGinley and Ingels had discussed whether his prior Missouri conviction for armed criminal action would be considered a person or nonperson felony in Kansas.

In opposing the motion, the State called Ingels to testify about her legal representation of McGinley. Ingels testified that she and McGinley met several times and reviewed the evidence. She had numerous discussions with the State to consider various plea offers, but many of the proposed plea agreements were rejected by either McGinley

5

or the State. One offer McGinley rejected before the preliminary hearing would have required the State to recommend a 220-month sentence and dismiss a federal case.

Prior to the pretrial hearing, McGinley told Ingels that he wanted to plead as charged because he believed his federal case might get dismissed. Ingels counseled McGinley that the plea offer was not a favorable proposal and noted that better offers were presented that guaranteed the federal government would dismiss its case. Nonetheless, Ingels presented the plea offer to the State and the prosecutor accepted. As part of the plea agreement, Ingels asked the State to recommend a sentence of no more than 230 months in prison. While McGinley was unhappy with Ingels, he advised her that he still wanted to finalize the latest plea agreement.

After McGinley informed Ingels that he wanted a new attorney, Ingels asked the prosecutor whether the plea offer would still be available if McGinley obtained new counsel. The State responded that it would no longer consider a plea deal and may file a motion for an upward departure if McGinley requested a new attorney. McGinley then decided to consummate the plea agreement. According to Ingels, McGinley understood that he had the right to a jury trial and it was his decision to enter the pleas and waive his right to a jury trial.

Ingels testified that she did not believe a voluntary intoxication defense was a viable defense strategy for McGinley's charges of possession with intent to distribute. Ingels explained that intent to distribute is not only measured at the time of arrest, but it also can be established at the time prior to McGinley's intoxication. Ingels testified that she talked to McGinley about his intoxication and explained that it would not help his defense. Ingels also believed a voluntary intoxication defense would be difficult to present because she would be limited in her questioning of McGinley to avoid suborning perjury. In this regard, Ingels explained that McGinley said he was faking being high

6

during his arrest. McGinley also changed his story several times about how he obtained the vehicle in which the drugs were found.

Lastly, although the plea offers were not contingent on McGinley's criminal history score, Ingels advised McGinley that his criminal history score would be calculated as a B. This was consistent with the State's assessment of McGinley's criminal history. The presentence investigation (PSI) report, however, calculated McGinley's criminal history score as a C. The parties miscalculated McGinley's criminal history score by assuming his Missouri conviction for armed criminal action would convert to a person felony in Kansas.

After considering the parties' arguments, the district court denied McGinley's motion to withdraw pleas. At the outset, the district court noted that a presentence motion to withdraw pleas may be granted for good cause. First, the district court determined that Ingels provided competent representation to McGinley. Next, the district court found that McGinley was not misled or coerced by the State. In this regard, the district court noted that withdrawing all plea offers and filing a motion for an upward departure was the prerogative of the State. Finally, the district court ruled that the pleas were fairly and understandably made.

Before sentencing, the district court also addressed the possibility of any implied prosecutorial vindictiveness raised in McGinley's argument that he was coerced to enter his pleas. McGinley argued that the prosecutor sought to punish him for attempting to exercise his right to effective counsel. But the district court found the State did not commit prosecutorial vindictiveness by informing McGinley that it would not consider a plea agreement and might move for an upward departure if he obtained new counsel shortly before the trial was scheduled to begin.

At sentencing, both parties agreed that McGinley's criminal history score was a C. In compliance with the plea agreement, the State requested a 230-month prison sentence. But the district court sentenced McGinley to 218 months in prison. The district court also ordered payment of $1,585 in BIDS attorney fees. McGinley appeals.

MOTION TO WITHDRAW PLEAS

On appeal, McGinley first contends the district court abused its discretion when it denied his motion to withdraw pleas. McGinley argues the district court's findings, which justified its decision to deny his pleas, were unsupported by substantial competent evidence. Specifically, McGinley claims:  (1) Ingels provided incompetent representation by failing to pursue a voluntary intoxication defense; (2) Ingels provided incompetent representation and, as a result, he misunderstood his plea because Ingels misrepresented his criminal history score; and (3) the State unfairly coerced him into pleading no contest.

At the outset, we briefly summarize the relevant standards of review and law relating to plea withdrawals. A district court may allow a defendant to withdraw a no contest plea for good cause any time before sentencing. K.S.A. 2018 Supp. 22-3210(d)(1). On appeal, the defendant must establish that the district court abused its discretion in denying a presentence motion to withdraw plea. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Miller*, 308 Kan. 1119, 1138, 427 P.3d 907 (2018).

In assessing whether the district court abused its discretion, our court does not reweigh evidence or evaluate witness credibility. Instead, we defer to the district court's factual findings provided those findings are supported by substantial competent evidence. *DeAnda*, 307 Kan. at 503. Substantial competent evidence is evidence that a reasonable

8

person could accept as adequate to support a conclusion. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). As the party alleging error, McGinley bears the burden of establishing an abuse of discretion. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016).

A district court may grant a defendant's presentence motion to withdraw pleas if the defendant makes a showing of good cause. K.S.A. 2018 Supp. 22-3210(d)(1). To determine whether the defendant has shown good cause, the district court should consider three factors: (1) whether competent counsel represented the defendant; (2) whether someone misled, coerced, mistreated, or unfairly took advantage of the defendant; and (3) whether the defendant fairly and understandingly entered the plea. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). The defendant does not need to establish all three *Edgar* factors to demonstrate good cause to withdraw the pleas and the district court may also consider other factors in making its determination. *DeAnda*, 307 Kan. at 503. We will individually consider the three *Edgar* factors.

*Competent Representation*

To establish good cause for a plea withdrawal based on incompetent legal representation, a defendant does not need to prove constitutionally ineffective assistance of counsel. *State v. Aguilar*, 290 Kan. 506, 512-13, 231 P.3d 563 (2010). Instead, mere "lackluster advocacy" may support the first *Edgar* factor and provide good cause to withdraw a plea before sentencing. 290 Kan. at 513. To engage in competent representation, plea counsel must advise the defendant of the range of possible penalties and discuss the choices available to the defendant. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

McGinley alleges the district court erred in finding Ingels competently represented him because she failed to advise him of a voluntary intoxication defense and failed to

9

adequately research his prior Missouri conviction for armed criminal action. We will separately analyze the two complaints.

Voluntary intoxication may be used as a defense to negate the intent element of a specific intent crime. *State v. Seba*, 305 Kan. 185, 211, 380 P.3d 209 (2016). In this case, possession of a controlled substance with intent to distribute is a specific intent crime. *State v. Gibson*, 30 Kan. App. 2d 937, 953, 52 P.3d 339 (2002). As a result, voluntary intoxication was a potential defense to the charges of possessing methamphetamine and marijuana with intent to distribute.

Criminal defendants have ultimate control over three decisions: (1) what plea to enter; (2) whether to waive a jury trial; and (3) whether to testify. *State v. Brown*, 305 Kan. 413, 425, 382 P.3d 852 (2016). "[A]ll other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his or her client." *Bledsoe v. State*, 283 Kan. 81, 92, 150 P.3d 868 (2007). With regard to strategic and tactical decisions, the attorney does not need to ask a defendant's permission; a consultation simply "'implies a general discussion between counsel and the client.'" *Brown*, 305 Kan. at 425 (quoting *State v. Bafford*, 255 Kan. 888, 895, 879 P.2d 613 [1994]). But strategic choices based on less than a complete investigation are reasonable only to the extent that reasonable professional judgment supports the limitation on the investigation. *State v. Butler*, 307 Kan. 831, 854, 416 P.3d 116 (2018).

McGinley argues that Ingels did not reasonably investigate a voluntary intoxication defense and failed to inform him that the defense could be raised at trial. McGinley asserts Ingels provided incompetent representation by failing to investigate the amount of drugs he consumed, the time he ingested them with reference to his arrest, and the failure to request additional drug testing on his blood sample.

10

Although Ingels did not tell McGinley about a voluntary intoxication defense, they had discussed his intoxication and Ingels explained to McGinley that his intoxication would not help his defense. According to Ingels, she decided not to pursue a voluntary intoxication defense for several reasons. First, this defense would require McGinley to admit he had drugs in his system when arrested, which would be counterproductive to a defense against the drug charges. Second, the State could easily overcome the voluntary intoxication defense because intent to distribute is measured over a length of time and not just at the time of arrest.

A third reason Ingels did not pursue a voluntary intoxication defense was to avoid suborning perjury from McGinley. An attorney's duty of candor prevented Ingels from knowingly offering evidence she knew to be false. Kansas Rule of Professional Conduct 3.3(a)(3) (2019 Kan. S. Ct. R. 350). McGinley had disclosed to Ingels that he "was faking it" during that part of his arrest when he acted unruly. McGinley also provided inconsistent factual accounts to Ingels during their discussions.

Ingels reasonably expected that a voluntary intoxication defense would be unsuccessful and counterproductive to McGinley's defense strategy. The State had strong and compelling evidence that McGinley possessed methamphetamine and marijuana with intent to distribute given the large amount of drugs and cash, the scales and packaging materials found with the drugs, and the weapons in the vehicle. See *Gibson*, 30 Kan. App. 2d at 953. Of course, the effect of a defense strategy on the jury is an appropriate consideration to take into account when determining whether to raise that defense. See *State v. Mason*, No. 117,735, 2018 WL 4517354, at *7-8 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. ___ (June 24, 2019).

All things considered, Ingels' decision to forego a voluntary intoxication defense was an exercise of reasonable professional judgment based on substantial competent evidence that such a defense would be unsuccessful and potentially counterproductive.

11

As a result, the district court did not err by ruling that Ingels provided competent representation.

Next, we consider the second basis for McGinley's claim that defense counsel was incompetent—informing him of an inaccurate criminal history score.

When the plea agreement was made, Ingels, McGinley, and the State believed McGinley's criminal history score would be calculated as a B. This predicted score was calculated assuming that McGinley's prior Missouri conviction for armed criminal action would be classified as a person felony in Kansas. However, the armed criminal action was classified as a nonperson felony and McGinley's criminal history was scored a C. As a result, McGinley's presumptive sentencing range for his base offense was lower than the parties believed when McGinley pled no contest to the charges.

A mutual mistake about a defendant's criminal history at the time of plea negotiations and the plea hearing is not an automatic basis for withdrawing a plea. *State v. Schow*, 287 Kan. 529, 543, 197 P.3d 825 (2008). But "the district court may consider the circumstances giving rise to the mutual mistake to the extent they may implicate the factors applicable to the existence of good cause to withdraw a plea." 287 Kan. at 546.

The Kansas Supreme Court found reversible error when a district court failed to consider the *Edgar* factors in determining whether the parties' mutual mistake on the defendant's criminal history amounted to good cause to withdraw the plea. *Schow*, 287 Kan. at 546. The *Schow* court outlined some case specific issues about the mutually mistaken criminal history that impacted whether counsel provided competent representation in that case. First, defense counsel withdrew from the case before sentencing to protect Schow's interests. Second, our Supreme Court noted that information about the prior convictions which resulted in a higher than anticipated criminal history score was in a prior PSI report from the same district court. As a result,

12

the Supreme Court questioned whether it was reasonable for defense counsel to rely on the State's representation of the prior convictions when the accurate prior criminal history was apparent from the court's record. Finally, the *Schow* court questioned whether defense counsel failed to understand or apply the sentencing guidelines.

At the hearing on McGinley's motion to withdraw pleas, Ingels testified about her investigation into McGinley's criminal history and the advice she provided:

"[THE PROSECUTOR:] And the only issue was we all believed that armed criminal action would be a person felony?

"[INGELS:] It is a person felony in Missouri, I looked into that.

"I just—obviously, I don't know how everything's going to convert, as you never do, and when it converted under the Kansas law, it converted to a nonperson felony.

"[THE PROSECUTOR:] So even though it's a person felony in Missouri, it was scored here as a nonperson?

"[INGELS:] Correct, and when I researched it, I was under the assumption that it would convert here as a person felony and that's what I wanted to advise him of.

"It's always better, in my opinion, error on the side of caution of higher and then have it be less, which benefits them, then presume he's a C and have him come back as a higher B, rather than the other way around.

"[THE PROSECUTOR:] Be better to tell him he's a B and it be a C, than saying, you're a C and then all of a sudden, wow, it's a lot more time?

"[INGELS:] Right, and I always tell them it's not a guarantee because I can't—I don't have all your priors and I'm not in charge of writing the PSI's and I can't make a 100 percent accurate prediction on what it will be, but I did research it and armed criminal action is a person felony in Missouri."

Ingels showed that she understood and applied the sentencing guidelines to McGinley's criminal history. Unlike the information available to counsel in *Schow*, no prior Kansas PSI report was available which would have alerted Ingels about how his Missouri armed criminal action conviction would be classified in Kansas. Moreover, Ingels did not guarantee that McGinley's criminal history would be scored a B.

13

We certainly acknowledge that Kansas' evolving standards on classifying prior out-of-state convictions has made it difficult for defense counsel to advise criminal defendants with certainty regarding how a particular prior conviction will be calculated as part of a criminal history score. See *State v. Weber*, 309 Kan. 1203, 442 P.3d 1044 (2019); *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018); *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015).

In short, unlike the district court in *Schow*, in the present case the district court considered the *Edgar* factors in determining whether the parties' mutual mistake of McGinley's criminal history score constituted good cause to withdraw his pleas. We are persuaded that the district court did not abuse its discretion by finding that Ingels provided competent legal representation despite overestimating McGinley's criminal history score.

*Fairly and Understandingly Entered Plea*

With regard to the second *Edgar* factor, the district court found that McGinley fairly and understandingly entered his pleas of no contest. In response, McGinley reprises his earlier argument and asserts that the parties' mutual mistake about his criminal history score rendered his pleas unknowingly made.

When entering his pleas, McGinley testified that he understood the charges against him and the possible penalties. McGinley understood that by pleading no contest he would waive his constitutional right to a jury trial and would give up any defenses. The district court advised McGinley that his sentence would depend on the number and kind of prior convictions in his criminal history. McGinley agreed that he and Ingels discussed his criminal history.

14

Unlike in *Schow*, the district court made no findings on McGinley's expected criminal history score or otherwise suggested that McGinley's criminal history would be scored a B. Additionally, Ingels testified that the plea offers did not hinge on McGinley's criminal history score. Neither the plea agreement nor the discussion at the plea hearing predicted that McGinley would receive a B criminal history score. Instead, the district court advised McGinley of the maximum possible sentences corresponding to his crimes.

We consider the warnings about maximum possible penalties McGinley received during the plea hearing as support for the district court's finding that McGinley's pleas were fairly and understandingly made. See *State v. Lackey*, 45 Kan. App. 2d 257, 270, 246 P.3d 998 (2011). Substantial competent evidence supports the district court's finding that McGinley fairly and understandingly entered his no contest pleas.

*No Coercion or Mistreatment*

McGinley next challenges the district court's finding that he was not misled, coerced, unfairly taken advantage of, or mistreated. McGinley contends the State engaged in prosecutorial vindictiveness which coerced him into pleading no contest when it threatened to withdraw all plea offers and possibly file an upward departure if he obtained new counsel and, as a result, the trial was continued.

The parties agree that McGinley sought the plea agreement from the State three days before trial was to begin. When McGinley questioned about replacing his attorney, the State responded that it would not consider the plea deal and may file a motion for an upward departure if the trial date were continued. The dispute is whether the State's negotiating conditions were a valid exercise of prosecutorial discretion or so coercive that McGinley should be permitted to withdraw his pleas.

15

A criminal defendant has no constitutional right to a plea agreement. *State v. Morris*, 298 Kan. 1091, 1104, 319 P.3d 539 (2014). That said, a defendant's right to due process prevents the State from punishing or retaliating against the defendant for exercising a legal right. *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). As the United States Supreme Court observed: "But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." 434 U.S. at 363.

Our court has found no improper coercion when a prosecutor informs a criminal defendant that no further plea deals will be considered if the defendant rejects the offer at hand. *State v. Montgomery*, No. 118,558, 2019 WL 1303168, at *4-5 (Kan. App. 2019) (unpublished opinion), *petition for rev. filed* April 19, 2019. And McGinley concedes, "there was nothing wrong with the prosecution stating that if [he] delayed accepting the plea beyond the pretrial hearing date that the plea would no longer be available." Instead, McGinley suggests the State's warning that it would withdraw the latest plea offer and consider filing an upward departure impermissibly coerced him into accepting the plea offer and refrain from replacing defense counsel.

Our Supreme Court addressed claims of prosecutorial vindictiveness during plea negotiations in *State v. Smallwood*, 264 Kan. 69, 77-78, 955 P.2d 1209 (1998). In *Smallwood*, the defendant claimed that the State's threat to reindict him on a more serious charge of felony murder if he refused to plead guilty to second-degree murder constituted prosecutorial vindictiveness. However, our Supreme Court rejected Smallwood's claim because the State merely presented Smallwood with the alternatives of foregoing trial or face a charge for which he was plainly subject to prosecution.

Relying on *Smallwood*, our court found no improper coercion to support a plea withdrawal when the State threatened to refile charges in separate complaints—which would have resulted in a significantly higher possible total sentences—if the defendant

16

did not accept a plea agreement. *Diaz v. State*, No. 116,806, 2018 WL 475511, at \*5 (Kan. App.) (unpublished opinion), *rev. granted* 308 Kan. 1593 (2018). The *Diaz* court reasoned, "the State's threatened restructuring of the charges does not appear to have been an attempt to avoid taking a dubious case to trial and, as in *Smallwood*, the charges against Diaz were ones for which he was 'plainly subject to prosecution.'" 2018 WL 475511, at \*5.

In this case, the State's warning that it would withdraw the latest plea offer and might move for an upward departure if the trial date was continued because McGinley obtained new counsel did not amount to prosecutorial vindictiveness or impermissible coercion.

The evidence suggests the State's purpose in advising McGinley of its intent to withdraw its latest plea offer and consider moving for an upward departure if McGinley proceeded to discharge his attorney was to prevent delaying the trial which was only three days away—not to retaliate against McGinley for exercising his right to effective counsel. As the State explained, it would have considered moving for a departure "if we were to have to reset this matter for trial if he were to get a new attorney." The district court also observed that when McGinley initially accepted the plea agreement, all parties were prepared for the jury trial. It is also noteworthy that McGinley had previously continued the preliminary hearing to seek different counsel. The State's purpose to prevent McGinley from any further delays in the commencement of jury trial was not an improper motive that indicates prosecutorial vindictiveness.

The plea agreement McGinley sought three days before trial was not the first plea offer made in this case. Rather, the parties engaged in extensive plea negotiations during the criminal litigation. And McGinley made several plea offers to the State before the final agreement materialized. In one instance, the State accepted McGinley's offer for a

recommended 120 month sentence, but McGinley later abandoned this plea agreement after he was unhappy with the charges involved in the agreement.

Moreover, this is not a situation where McGinley was threatened with either proceeding to trial with ineffective counsel or accepting a plea deal. The district court noted that Ingles "is a very experienced defense counsel" and found that she provided competent representation during the plea negotiations. The district judge also believed that Ingels would have provided effective representation at trial despite McGinley's discontent:

> "So I was aware that Mr. McGinley wasn't happy with Ms. Ingels and with his representation, but also in the back of my mind, I didn't know if anyone would meet Mr. McGinley's approval and the Court's feeling is at the time I concluded that Ms. Ingels could provide effective aid in representing the defendant, Mr. McGinley, and could present whatever defenses they might have discussed or thought might be there."

Like the greater charge in *Smallwood*, McGinley was plainly subject to an upward sentencing departure and the State possessed evidence supporting that departure. When determining whether substantial and compelling reasons for a sentencing departure exist, a district court may consider whether a drug crime was committed as part of a major organized drug manufacture, cultivation, or distribution activity. K.S.A. 2018 Supp. 21-6816(a)(1).

A major organized drug manufacture, cultivation, or distribution activity may be shown if:  (1) the defendant "derived a substantial amount of money or asset ownership from the illegal drug activity"; (2) there was a "presence of manufacturing or distribution materials such as, but not limited to . . . scales or packaging material"; and (3) the defendant possessed "large amounts of illegal drugs or substantial quantities of controlled substances." K.S.A. 2018 Supp. 21-6816(a)(1)(A), (D), and (F). In the present case, the State possessed evidence supporting these three factors because a search of McGinley's

18

vehicle revealed $30,135, scales, packaging materials, and substantial amounts of marijuana and methamphetamine.

Finally, McGinley testified that he did not consider the State's warnings as a threat. Instead, at the plea hearing, McGinley responded that no one forced or threatened him to enter no contest pleas. And McGinley informed the district court that he entered the pleas freely, voluntarily, knowingly, and of his own free will. As a result, we conclude the district court did not err by finding that McGinley was not coerced into entering into the plea agreement.

In summary, we find the district court properly applied the three *Edgar* factors to the facts of this case, McGinley failed to establish good cause for his plea withdrawals, and the district court did not abuse its discretion by denying McGinley's motion to withdraw pleas.

BIDS ATTORNEY FEES

McGinley contends the district court erred when it ordered him to pay $1,585 to reimburse BIDS attorney fees expended for his legal representation. McGinley claims the district court failed to satisfy the requirements of K.S.A. 22-4513 and *State v. Robinson*, 281 Kan. 538, 543-44, 132 P.3d 934 (2006) by neglecting to explicitly consider his financial resources and the burden that payment would impose on him.

This issue involves interpreting K.S.A. 22-4513. Interpretation of a statute is a question of law over which we exercise unlimited review. *State v. Hernandez*, 292 Kan. 598, 609, 257 P.3d 767 (2011).

Under K.S.A. 22-4513(b), when assessing BIDS attorney fees, a district court "shall take account of the financial resources of the defendant and the nature of the

burden that payment of such sum will impose." Our Supreme Court in *Robinson* explained that a "sentencing court . . . must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision." 281 Kan. at 546. The remedy for a sentencing court's failure to make these explicit findings is to remand to the district court for such findings. See 281 Kan. at 548.

At sentencing, McGinley requested that the district court waive any payment of the BIDS attorney fees. The State argued that McGinley would have "some ability to earn some money while in prison" and requested that allotments from his prison earnings be used to pay the BIDS attorney fees. The district court concluded, "Very well. The Court will order that Mr. McGinley pay attorney's fees of $1,585."

Contrary to the requirements of K.S.A. 22-4513(b) as discussed in *Robinson*, the district court failed to explicitly discuss McGinley's financial resources or the burden that payment of BIDS attorney fees would impose on him. The district court also did not state on the record how it weighed those two factors in ordering McGinley to reimburse $1,585 in BIDS attorney fees. Accordingly, we vacate the BIDS attorney fees reimbursement order and remand to the district court to reconsider its order in compliance with K.S.A. 22-4513(b) and *Robinson*.

Affirmed in part, sentence vacated in part, and case is remanded with directions.